**Michael TRAVERS, M.D., Plaintiff,**

v.

**Louis SULLIVAN, Defendant.**

**No. CS–91–232–JLQ.**

United States District Court,
E.D. Washington.

April 20, 1992.

Kenneth Joel Haber, Rockville, Md., Brian H. Miller, Dano Law Firm, Othello, Wash., for plaintiff.

Frank A. Wilson, Asst. U.S. Atty., Spokane, Wash., Lucille G. Meis, Asst. Regional Counsel, Office of Gen. Counsel, Dept. of Health & Human Services, Denver, Colo., for defendant.

### ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

QUACKENBUSH, Chief Judge.

BEFORE THE COURT is the Defendant's Motion for Summary Judgment (Ct. Rec. 25), heard with telephonic argument on April 10, 1992. The Plaintiff was represented by Kenneth Joel Haber; the Defendant appeared through Assistant United States Attorney Frank A. Wilson, and general counsel for the Department of Health and Human Services, Denver, Colorado, Lucille Meis.

### I. FACTUAL AND PROCEDURAL BACKGROUND

On December 16, 1988, the Plaintiff was charged in Utah state court with knowingly filing a false medical claim. Specifically, the Plaintiff was accused of using the wrong billing code number in claiming reimbursement for a Medicaid claim, resulting in misrepresentation of the quality or quantity of the services rendered by him.

The Plaintiff pleaded "no contest" to the charge. In the Plaintiff's plea agreement, he agreed to pay restitution, investigation costs, and a civil penalty. (A.R. 186–88.) The plea agreement further provided that if the Plaintiff failed to make the agreed payment within 60 days, the court would accept his no-contest plea and proceed to schedule the matter for imposition of sentence. *Id.* The agreement also provided that if the Plaintiff complied with the terms of the agreement, the court would allow him to withdraw his no-contest plea and dismiss the charge against him with prejudice. *Id.* In an "Order In Re Plea Agreement," the Utah state court approved the Plaintiff's plea agreement "as a 1st offender disposition of the case." (A.R. 190.) In addition, the court took the Plaintiff's plea of "no contest" under advisement. *Id.*

On January 9, 1989, the Plaintiff notified the Utah court that the required payments had been made. On the same day, the court entered an order permitting the Plaintiff to withdraw his plea and dismissing, with prejudice, the criminal charges. On June 20, 1989, James F. Patterson, Director of Health Care Administration Sanctions, Office of Inspector General, United States Department of Health and Human Services, notified the Plaintiff that he was being excluded from participation in the Medicaid/Medicare programs and all state health-care systems for a mandatory period of 5 years under section 1128(a)(1) of the Social Security Act, 42 U.S.C. § 1320a–7(a)(1). The notification informed the Plaintiff that the exclusion was based on his conviction of a criminal offense related to the delivery of an item or service under the Medicaid program. (A.R. 204.)

The 5–year exclusion was affirmed upon administrative review by the Department of Health and Human Services Departmental Appeals Board (Appeals Board). The Plaintiff then filed a complaint with this court for judicial review and for injunctive and declaratory relief. Specifically, the Plaintiff alleges that his agreement with the State of Utah did not amount to a conviction of a criminal offense related to the delivery of an item or service under the Medicaid program, thus his mandatory 5–year exclusion from the Medicaid program was not justified. Further, the Plaintiff alleges that his right to due process was violated in the administrative proceedings

below.[1] However, the Plaintiff's claim that his right to due process was violated will not be reached in this order because the issues have yet to be addressed by the Defendant.

On February 3, 1992, this court entered an order granting the Defendant's motion for a protective order. The protective order prevented the Plaintiff from engaging in discovery pending the resolution of the Defendant's summary judgment motion because the court found that the issue raised in the Defendant's motion involved a pure legal question. That question, which is the one currently before the court, is whether the Plaintiff was "convicted" of a "program-related" crime under 42 U.S.C. § 1320a–7(a)(1).

## II. JURISDICTION

■ Pursuant to 42 U.S.C. § 1320a–7(f), which incorporates 42 U.S.C. § 405, this court has jurisdiction to review administrative decisions to ensure that sufficient evidence exists to support the decision, and that the proper legal standard was used. *Higbee v. Sullivan*, 935 F.2d 1038, 1041 (9th Cir.1991). The court's review, however, is limited to the Secretary's final decision, the administrative record, and the pleadings. *Id.* The Defendant's factual determinations will be upheld if they are supported by substantial evidence. 42 U.S.C. § 405(g).

## III. SUMMARY JUDGMENT STANDARD

The purpose of summary judgment is to avoid unnecessary trials when there is no dispute as to the material facts before the court. *Zweig v. Hearst Corp.*, 521 F.2d 1129 (9th Cir.), *cert. denied*, 423 U.S. 1025, 96 S.Ct. 469, 46 L.Ed.2d 399 (1975). The moving party bears the burden of informing the court of the basis for its motion, together with evidence demonstrating the

absence of any genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323, 106 S.Ct. 2548, 2552, 91 L.Ed.2d 265 (1986).

■ The moving party is entitled to summary judgment when, viewing the evidence and the inferences arising therefrom in favor of the nonmoving party, there are no genuine issues of material fact in dispute, and they are entitled to judgment as a matter of law. Fed.R.Civ.P. 56(c); *Semegen v. Weidner*, 780 F.2d 727 (9th Cir. 1985). However, where reasonable minds could differ on the material facts at issue, summary judgment is not appropriate. *See v. Durang*, 711 F.2d 141 (9th Cir.1983).

■ When evaluating evidence offered to resist summary judgment, the Ninth Circuit distinguishes between direct and circumstantial evidence. *See T.W. Elec. Serv., Inc. v. Pacific Elec. Contractors Ass'n*, 809 F.2d 626, 630–31 (9th Cir.1987). Where the nonmoving party has come forward with direct evidence contrary to that offered by the movant, a credibility issue is raised. Credibility determinations are for the trier of fact and, therefore, are not appropriately resolved by summary judgment. *McLaughlin v. Liu*, 849 F.2d 1205, 1207 (9th Cir.1988). Where direct evidence produced by the moving party conflicts with direct evidence produced by the nonmoving party, the court must assume the truth of the evidence set forth by the nonmoving party with respect to that fact. *T.W. Elec.*, 809 F.2d at 631–32. However, when the only evidence offered in opposition to the motion for summary judgment is circumstantial evidence, then the court may inquire into the plausibility of inferences drawn from that evidence. *Id.*

■ In evaluating the appropriateness of summary judgment, three steps are necessary: (1) determination of whether a fact is material; (2) determination of whether

---

**1.** These allegations are that: (1) the Defendant improperly delegated to the Inspector General the responsibility of imposing sanctions and exclusions from the Medicare and Medicaid programs; (2) the Defendant failed to publish regulations and to provide notice to the Plaintiff as to the Inspector General's intended application

of 42 U.S.C. § 1320a–7; (3) the Defendant's previously published regulations, applicable to the pre–1987 statutory provisions, were modified without publication and notice; and (4) the Inspector General applied 42 U.S.C. §§ 1320a–7(a)(1) and 1320a–7(i) pursuant to specific policy provisions, which he failed to publish.

there is a genuine issue for the trier of fact, as determined by the documents submitted to the court; and (3) consideration of that evidence in light of the appropriate standard of proof. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247–48, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986). As to materiality, "only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment. Factual disputes which are irrelevant or unnecessary will not be counted." *Id.* at 248, 106 S.Ct. at 2510. When there is a complete failure of proof concerning an essential element of the nonmoving party's case, all other facts are rendered immaterial, and the moving party is entitled to judgment as a matter of law. *Celotex*, 477 U.S. at 323, 106 S.Ct. at 2552.

■ Even if a fact is determined to be material, summary judgment is still inappropriate if the dispute about that fact is genuine, that is, if the evidence is such that a reasonable jury could return a verdict for the nonmoving party. *Anderson*, 477 U.S. at 248, 106 S.Ct. at 2510. However, there is no genuine issue of fact if, on the record taken as a whole, a rational trier of fact could not find in favor of the party opposing the motion. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587, 106 S.Ct. 1348, 1356, 89 L.Ed.2d 538 (1986). A party opposing a motion for summary judgment "must do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita*, 475 U.S. at 586, 106 S.Ct. at 1356. In order to survive a supported motion for summary judgment, the nonmoving party must set forth "specific facts showing that there is a genuine issue for trial." Fed. R.Civ.P. 56(e). In other words, once the moving party has met its burden, the party opposing the motion may not rest upon the allegations or denials contained in his pleadings. *Anderson*, 477 U.S. at 248, 106 S.Ct. at 2510.

■ "[A]t the summary judgment stage the judge's function is not himself to weigh the evidence and determine the truth of the matter, but to determine whether there is a genuine issue for trial." *Anderson*, 477 U.S. at 249, 106 S.Ct. at 2510. "When determining if a genuine factual issue ... exists, ... a trial judge must bear in mind the actual quantum and quality of proof necessary to support liability...." *Id.* at 254, 106 S.Ct. at 2513. This necessitates application of the substantive evidentiary standard of proof that would apply at the trial on the merits. *Id.* at 252, 106 S.Ct. at 2512. "Thus, in ruling on a motion for summary judgment, the judge must view the evidence presented through the prism of the substantive evidentiary burden." *Id.* at 254, 106 S.Ct. at 2513. The question is, therefore, "whether a jury could reasonably find *either* that the plaintiff proved his case by the quality and quantity of evidence required by the governing law *or* that he did not." *Id.* (Emphasis in original.) The standard which governs the trial judge's determination as to whether a genuine issue exists is provided by the applicable evidentiary standards. *Id.* at 255, 106 S.Ct. at 2513. This being a civil case, the applicable evidentiary standard is a preponderance of the evidence.

## IV. DISCUSSION

42 U.S.C. § 1320a–7(a) provides, in part, that:

The Secretary *shall exclude* the following individuals and entities from participation in any program under title XVIII [42 U.S.C. §§ 1395 et seq.] and shall direct that the following individuals and entities be excluded from participation in any State health care program ...:

(1) Conviction of program-related crimes. Any individual or entity that has been convicted of a criminal offense related to the delivery of an item or service under title XVIII [42 U.S.C. §§ 1395 et seq.] or under any State health care program.

(Emphasis added.)

In ruling on the Defendant's summary judgment motion, the court must decide whether the Plaintiff was "convicted" of a "program-related crime," thereby mandating the 5–year exclusion imposed by the

Defendant. The court will proceed with a two-part analysis. First, it will determine whether the Plaintiff was "convicted." If the court finds that the Plaintiff was convicted, the court will then determine whether he was convicted of a "program-related crime."

### A. Conviction

In the Order Granting Motion for Protective Order (Ct.Rec. 24), this court held that the language of 42 U.S.C. § 1320a–7(a)(1) is mandatory, not discretionary (i.e. "The Secretary *shall* exclude the following individuals ..."). Likewise, the court found that the question of whether the Plaintiff's involvement with Utah authorities constituted a "conviction" under section 1320a–7(a)(1) must be decided by this court as a matter of law. *See United States v. Wood,* 943 F.2d 1048, 1052 n. 5 (9th Cir.1991) (matters of statutory interpretation are questions of law). Consequently, the Defendant's interpretation of the term "conviction" will be reviewed *de novo,* while the Defendant's factual determinations will be upheld if supported by substantial evidence.

42 U.S.C. § 1320a–7(i) sets forth four alternative definitions for the term "conviction" as used in 42 U.S.C. § 1320a–7(a)(1):

Convicted Defined: For purposes of [42 U.S.C. § 1320a–7(a) and (b) ], an individual or entity is considered to have been "convicted" of a criminal offense—

(1) when a judgment of conviction has been entered against [an] individual or entity by a Federal, State, or local court, regardless of whether there is an appeal pending or whether the judgment of conviction or other record relating to criminal conduct has been expunged;

(2) when there has been a finding of guilt against [an] individual or entity by a Federal, State, or local court;

(3) when a plea of guilty or nolo contendere by [an] individual or entity has been accepted by a Federal, State, or local court; or

(4) when [an] individual or entity has entered into participation in a first offender, deferred adjudication, or other arrangement or program where judgment of conviction has been withheld.

In his motion for summary judgment, the Defendant asserts that the Plaintiff's contact with the Utah judicial system was a conviction under two of these definitions: sections 1320a–7(i)(3) and 1320a–7(i)(4).

#### 1. Section 1320a–7(i)(3)

█ The dispositive issue concerning section 1320a–7(i)(3) is whether the Utah court "accepted" Plaintiff's plea of no contest. Because the term "accept" is not defined in the statute, it will be given its ordinary meaning. *See United States v. Chan Yu–Chong,* 920 F.2d 594, 597 (9th Cir.1990). In Webster's *New Collegiate Dictionary* (1959 Edition), accept is defined as "to receive (a thing offered) with a consenting mind." In this case, the ALJ utilized this definition when he held that "a no contest plea is 'accepted' within the meaning of [section 1320a–7(i)(3) ] whenever a party offers a no contest plea and a court consents to receive it as an element of an arrangement to dispose of a pending criminal complaint against that party." (A.R. 007.)

There is no dispute as to the proper definition of the word "accept" in the context of section 1320a–7, nor are there any genuine issues of material fact relating to the application of the definition. Rather, the Plaintiff contends that the facts in this case, as a matter of law, indicate that his no-contest plea was never "accepted" by the Utah court. The court agrees.

According to the plea agreement, the Plaintiff agreed to the *entry* of a plea of "no contest" to the pending charges. (A.R. 187.) Moreover, the Utah court found that the Plaintiff *entered* into the plea knowingly and voluntarily in accordance with both the Federal and Utah Rules of Criminal Procedure. (A.R. 040.) The Utah court also stated that "the no contest plea will be *entered* for [the Plaintiff]." *Id.* In the Order In Re Plea Agreement, the court approved the plea agreement as a first-offender disposition of the case and took the Plaintiff's plea under advisement and held the matter in abeyance for 60 days. (A.R. 190.) The court also held that while

the Plaintiff's plea was under advisement, he could not commit any other violation of the law. The court went on to state that if the Plaintiff fully complied with the plea agreement, it would entertain his petition to withdraw his plea. On the other hand, if the Plaintiff failed to comply with the plan contained in the plea agreement, the court stated that it would entertain the States's petition to accept the Plaintiff's plea and proceed to set the matter for imposition of sentence. (A.R. 181.)

The preceding language from the Plaintiff's plea agreement and the Utah court's Order In Re Plea Agreement deal mainly with the *entry* of the Plaintiff's plea, not with the acceptance of the plea by the court. This is noteworthy because there is a fundamental difference between entry into a plea agreement and acceptance of that agreement by the court. Under Rule 11 of both the Federal and Utah Rules of Criminal Procedure, the entry of a plea and the acceptance by the court of that plea are two different events. The entry of a plea usually involves an agreement between the prosecutor and the defendant, whereby the defendant submits to the court his plea pursuant to the plea agreement. It is after the entry of the plea that the court then must decide to either accept, reject or take the plea under advisement.

In the case at bar, the Defendant's conclusion that the Plaintiff "entered" into a plea agreement was based on substantial evidence. However, the same cannot be said for the Defendant's conclusion that the Utah court had "accepted" the Plaintiff's plea. The Utah court expressly took the Plaintiff's plea under advisement as part of a first-offender program. This directly contradicts the Defendant's claim that the Utah court "accepted" the Plaintiff's plea.

The court also finds that the Utah court's "approval" of the plea agreement as a first-offender disposition of the case did not amount to an "acceptance" of the plea under section 1320a–7(i)(3). Rather, the approval amounted to a conditional acceptance of the plea agreement, as opposed to acceptance of the plea. The Utah court, in essence, stated that it would accept the Plaintiff's no-contest plea and proceed to sentencing only if the express conditions precedent set forth in the plea agreement were not satisfied. The approval by the court of the plea agreement as a first-offender disposition, as opposed to acceptance of the plea, is not the type of acceptance intended by Congress to amount to a conviction under section 1320a–7(i)(3).

In its Order In Re Plea Agreement, the Utah court used the word "accept" one time: "Upon evidence that [Plaintiff] has failed to comply with the order of this court and/or the plea agreement, the Court will entertain the [State's] petition to *accept* [Plaintiff's] plea agreement...." (A.R. 181.) This quite clearly indicates that the Utah court did not "accept" the Plaintiff's plea at the time the no contest plea was entered. Based on this and other language contained in the Order In Re Plea Agreement, as well as language contained in the plea agreement itself, this court is compelled to find that substantial evidence did not exist for the Defendant to find that the Utah court accepted the Plaintiff's plea of no contest. Therefore, the Defendant's determination that the Plaintiff was "convicted" under section 1320a–7(i)(3) was in error and should be reversed.

### 2. Section 1320a–7(i)(4)

The Defendant also argues that the Plaintiff was "convicted" as defined under section 1320a–7(i)(4). As stated previously, this section states that an individual is considered to have been convicted when he "has entered into participation in a first offender, deferred adjudication, or other arrangement or program where judgment of conviction has been withheld."

There is substantial evidence in the administrative record for the court to conclude that the Plaintiff participated in a first-offender program where judgment of conviction had been withheld. For example, the Plaintiff's plea agreement states that "the Court may take the [Plaintiff's] plea of no contest under advisement, as part of a first offender program, and hold the matter in abeyance for a period of 60 days." (A.R. 187.) Further, in the Utah

court's Order In re Plea Agreement, the court approved "the Plea Agreement as a 1st offender disposition of the case." (A.R. 190.) The Utah court also stated that if the Plaintiff failed to comply with the terms of the plea agreement, it would entertain a motion by the State to accept the Plaintiff's plea and proceed to sentencing.

The Plaintiff argues that he did not participate in a first-offender program because a judgment of conviction was not withheld. Rather, the Plaintiff claims that he was directed to a non-criminal diversion program as proscribed by Utah Code of Criminal Procedure § 77–2–5:

> (1) At any time after the filing of an information or indictment and prior to conviction, the prosecuting attorney may, by written agreement with the defendant, file with the court, and upon approval of the court, divert a defendant to a non-criminal diversion program.

(A.R. 008.) The Plaintiff also cites Utah Code of Criminal Procedure § 77–2–7 in support of his position: "Diversion is not a conviction and if the case is dismissed the matter shall be treated as if the charge had never been filed."

In further support of his position, the Plaintiff points to the affidavit of Mr. McIff, the attorney who represented him during the criminal proceedings in Utah state court. In his affidavit, Mr. McIff stated that it was the intent of the parties to resolve the matter in a non-criminal fashion as provided under section 77–2–5 of the Utah Code. Pursuant to this provision, according to Mr. McIff, a diversion agreement was negotiated between the prosecutor and the Plaintiff. "It was pursuant to this diversion agreement and the proceedings, thereunder, that [the Plaintiff's] criminal prosecution was dropped and his billing dispute was resolved through this non-criminal diversion procedure." (A.R. 259.)

It is undisputed that a section 77–2–5 non-criminal diversion program does not constitute a "conviction" under section 1320a–7(i)(4). The remaining issue, therefore, is whether the disposition of the Plaintiff's case was a non-criminal diversion under section 77–2–5 of the Utah Code.

█ The Plaintiff first raised the non-criminal diversion argument in his brief before the Appeals Board, which was some 2 years after his involvement with the Utah state court. Besides Mr. McIff's affidavit, the Plaintiff has been unable to cite any other portion of the administrative record in support of his non-criminal diversion theory. In fact, the court notes that there is no mention of a non-criminal diversion, nor of section 77–2–5, the applicable non-criminal diversion section of the Utah Code, anywhere in the Plaintiff's plea agreement, the Utah judge's remarks, or in the Order In Re Plea Agreement. To the contrary, as mentioned above, both the plea agreement and the Order In Re Plea Agreement refer to the matter as a first-offender disposition of the case. The court further notes that the entry of a plea of guilty, albeit one of no contest, is inconsistent with the procedure set forth in non-criminal diversions.[2] Based on the foregoing, this court finds that there was substantial evidence for the Defendant to conclude that the Plaintiff participated in a first-offender program, rather than a non-criminal diversion program.

█ The Plaintiff claims that, at a minimum, Mr. McIff's affidavit creates a "dispute of fact" and, therefore, summary judgment is inappropriate. However, a court will not deny a summary judgment just because there are disputed facts; rather, there must be genuine issues of material facts. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 247–48, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986). Applying this stan-

---

**2.** In a deferred prosecution, an agreement is entered into between the prosecutor and the defendant. At the heart of deferred prosecution is an agreement by the prosecutor to delay bringing charges. What occurred in the case at bar cannot be characterized as a deferred prosecution because there was no deferral of prosecu-

tion. Instead, the charges were brought and a plea was tendered to the Utah court and the court, in effect, reserved ruling on the acceptance of the plea until the terms of the plea agreement had been fulfilled. This type of arrangement can most accurately be described as a deferred acceptance of a plea.

dard, the court finds that the non-criminal diversion issue can be resolved on summary judgment. This is because the issue is not what the Plaintiff allegedly thought; rather it is how the Utah court disposed of the matter. In other words, even if the facts alleged in Mr. McIff's affidavit are assumed to be true, that is, that the Plaintiff intended the case to be resolved in a non-criminal diversion fashion, the court would still find that there was substantial evidence supporting the Defendant's finding that *the Utah court* disposed of the Plaintiff's case via a first-offender program, not as a non-criminal diversion. Evidence of the Plaintiff's intent cannot refute the clear and straightforward language contained in the plea agreement and the Order In Re Plea Agreement, especially where such a claim surfaced 2 years after the fact. Therefore, although Mr. McIff's affidavit may create a factual dispute, it does not create a material factual dispute.

The Plaintiff also asserts that even if his case was disposed of as part of a first-offender program, a judgment of conviction was not withheld as required by section 1320a–7(i)(4). It is the Plaintiff's position that had the Utah court not accepted the plea agreement, he would have been able to withdraw his plea of no contest and proceed to trial under Rule 11(8)(c) of the Utah Rules of Criminal Procedure.[3] The Plaintiff contends that the Utah court could not have just proceeded to sentencing. Specifically, the Plaintiff asserts that "the plea was held in abeyance under advisement with [the Plaintiff] always maintaining the opportunity to withdraw the plea if the arrangement was rejected by the court." (Ct.Rec. 30, n. 5.)

First, the court notes that Rule 11(8)(c) does not allow a defendant the ability to withdraw his plea at any time; rather, the rule becomes applicable only upon the trial judge exercising his/her discretion. Moreover, Rule 11(8)(c) appears to apply only to "accepted" plea agreements. Therefore, because the Plaintiff claims that the Utah

court never accepted his plea, Rule 11(8)(c) is inapplicable in this case.

In addition, the court agrees with the Appeals Board that the Plaintiff simply states a truism in claiming that if the Utah court had rejected the plea agreement as part of a first-offender program, he would have been permitted to defend himself at trial. However, as indicated in the Order In Re Plea Agreement, the Utah court did approve the plea agreement as a first-offender disposition of the Plaintiff's case.

■ Part and parcel of the Utah court's approval of the plea agreement as a first-offender disposition of the case was the court's determination that it would entertain a motion to accept the Plaintiff's plea *and proceed to set the matter for the imposition of sentence* if the Plaintiff failed to comply with the terms of the agreement. This, the court determines, is substantial enough evidence to uphold the Defendant's determination that a judgment of conviction was withheld pending the completion of the first-offender program granted by the Utah court. The court finds additional support for its conclusion that the Plaintiff was convicted under section 1320a–7(i)(4) in the relevant legislative history relating to that section.

The Omnibus Budget Reconciliation Act (OBRA) of 1986 set forth what is now the current definition of the term "conviction." In the notes accompanying that act, Congress discussed the term "conviction" as it related to first-offender and deferred-adjudication dispositions.

It is the Committee's understanding that States are increasingly opting to dispose of criminal cases through [first offender and deferred adjudication] programs, where judgment of conviction is withheld. The Committee is informed that State first offender or deferred adjudication programs typically consist of a procedure whereby an individual pleads guilty or nolo contendere to criminal charges, but the court withholds actual entry of a judgment of conviction against

---

**3.** Utah Criminal Rule 11(8)(c) provides: "If the judge then decides that final disposition should not be in conformity with the plea agreement,

he shall advise the defendant and then call upon the defendant to either confirm or withdraw his plea."

them and instead imposes certain conditions or probation, such as community service or a certain number of months of good behavior. If the individual successfully complies with these terms, the case is dismissed entirely without a judgment of conviction ever being entered.

These criminal dispositions may well represent rational criminal justice policy. The Committee is concerned, however, that individuals who have entered guilty or nolo pleas to criminal charges of defrauding the Medicaid program are not subject to the exclusion from either Medicare or Medicaid. These individuals have admitted that they engaged in criminal abuse against a Federal health program and, in the view of the Committee, they should be subject to exclusion. If the financial integrity of Medicare and Medicaid is to be protected, the programs must have the prerogative not to do business with those who have pleaded to charges of criminal abuse against them. H.Rpt. No. 99–727, 99th Cong., 2d Sess. 75, *reprinted in* 1986 U.S.Code Cong. and Admin.News 3607, 3665.

The legislative history of section 1320a–7(i)(4) clearly indicates that Congress intended to exclude from Medicare and Medicaid programs those who entered into first-offender or deferred adjudication programs. More importantly, the legislative history reveals Congress' strong desire to ensure that individuals who have committed Medicaid or Medicare abuses are excluded from participating in the programs. The court finds that the case before it presents a factual scenario similar, if not identical, to the one Congress had in mind when it drafted section 1320a–7(i)(4).

In sum, the court finds that there are no genuine issues of material fact concerning the Plaintiff's participation in a first-offender program. Furthermore, the Defendant's conclusion that the Plaintiff participated in a first-offender program for the purposes of section 1320a–7(i)(4) was sup-

ported by substantial evidence. The court must uphold the Defendant's determination that the Plaintiff was "convicted" under section 1320a–7(i)(4).

## B. Program–Related Crime

■ The Plaintiff's final argument is that he was not convicted of a program-related crime under 42 U.S.C. § 1320a–7(a)(1) and, therefore, his 5–year mandatory exclusion was not warranted. The issue of whether the Plaintiff was convicted of a program-related crime will be viewed under the substantial evidence standard. 42 U.S.C. § 405(g).

First, the Plaintiff argues that the Defendant had to exercise discretion in the fact-finding process in order to conclude that his crime was program related. The Plaintiff contends that the Inspector General's compensation is allegedly determined, in part, by the number of exclusions imposed and, therefore, it was *per se* abuse of discretion to find that the Plaintiff's crime was program related.[4] If the Inspector General exercised discretion in this case, the court would have serious concerns about the propriety of the Plaintiff's exclusion. However, the court finds that the Inspector General did not exercise discretion.

The Plaintiff strenuously argues that the Inspector General's exclusion determinations are made on a case-by-case basis and, therefore, require discretion in the fact-finding process. The court, however, disagrees. A determination of whether a "conviction" is "program related" does not require fact-finding; rather, it requires a determination that, in fact, a "conviction" was "program related." In the case at bar, this is all that the Inspector General did. He merely examined the record and concluded, as this court does, that the Plaintiff's conviction was program related.

As Chief Judge Hull pointed out in *Greene v. Sullivan,* 731 F.Supp. 835, 837

---

**4.** The Plaintiff cites the regulatory preamble to the 1992 regulations implementing the subject statute in support of his position. However, the Plaintiff has offered no legitimate reason why these regulations, which were implemented

years after the incident in question, should be applied *ex post facto.* Therefore, the court will not consider the Plaintiff's argument as it relates to the 1992 regulations.

(E.D.Tenn.1990), the mandatory exclusion provisions of section 1320a–7(a) are self-executing. Therefore, the Inspector General's function with respect to section 1320a–7(a)(1) is not to engage in independent fact-finding. To the contrary, his role is to determine whether the facts before him are sufficient to trigger exclusion under the statute. In this case, the nature of the Plaintiff's crime was characterized by the State of Utah. The Inspector General merely concluded that the conviction met the requirement of a program-related crime, a conclusion that involved no fact-finding nor any discretion.

The Plaintiff also argues that his alleged offense was not "related to the delivery of an item or service" under the Medicare/Medicaid program, as required by section 1320a–7(a)(1). The Plaintiff admits, both during oral argument, and in his plea agreement that the billing code employed by his office for medical reimbursement was erroneous, thus resulting in over-payment for services rendered. The Plaintiff disputes the Inspector General's character-ization of his crime as "filing a false claim for Medicaid reimbursement." The Plain-tiff argues that there is a distinction be-tween the billing code errors that he admits occurred and the "false filing" claims lev-ied upon him by the Inspector General. He contends that his financial bookkeeping er-rors did not relate to the delivery of items or services but, at most, related to his overall "participation" in the Medi-care/Medicaid program. This, the Plaintiff claims, is an insufficient justification for exclusion under the current version of sec-tion 1320a–7(a)(1).

Section 1320a–7(a)(1) provides that an in-dividual must be excluded from the Medi-care and Medicaid programs if he has been convicted "of a criminal offense related to the delivery of an item or service...." This has been the law since section 1320a–7(a)(1) was amended in 1987. Prior to 1987, section 1320a–7(a)(1) provided that an indi-vidual must be excluded from the Medicare and Medicaid programs if he has been con-victed "of a criminal offense related to such individual's participation in the deliv-ery of medical care or services...."

In connection with his appeal, the Plain-tiff obtained what he refers to as "the Inspector General's unpublished regula-tions used in applying the post 1987 manda-tory amendments." These regulations are contained in the Administrative Record, be-ginning on page 129. The "regulations," as the Plaintiff refers to them, are con-tained in a 14–page report entitled "Civil Monetary Penalty and Exclusion Authori-ties." These regulations do contain the so-called "participation" standard. However, they do not indicate how this standard is to be applied. The Plaintiff contends that the use of this "participation" standard by the Inspector General is an abuse of discretion. The Plaintiff argues that the post–1987 statutory language defines distinctly dif-ferent conduct and that the pre–1987 stan-dard is harsher than the post–1987 version.

The Plaintiff's argument is without mer-it. The post–1987 version of section 1320a–7(a)(1) deleted the word "participation." Therefore, under the current version, an individual need only be convicted of a crimi-nal offense *related to* delivery, whereas the pre–1987 version required an individual to be convicted of a criminal offense *relat-ed to the participation* in delivery. The court finds that by deleting the word "par-ticipation," Congress broadened the scope of section 1320a–7(a)(1), it did not narrow it. Section 1320a–7(a)(1) now mandates ex-clusion when an individual is convicted of a criminal offense "related to the delivery of an item or service" under the Medicare and Medicaid programs, not just those individu-als who participated in the delivery of such services. The newer version, which was in effect at the time of the Plaintiff's offense, made it even easier to conclude that those individuals who provide billing or account-ing services, but who do not directly pro-vide medical care or items of medicine, are included among those subject to the man-datory exclusion section.

The 1987 amendment to section 1320a–7(a)(1) also replaced the phrase "medical care or service," which appeared in the pre–1987 version, with "item or service." Once again, the court finds that the pre–1987 version of section 1320a–7(a)(1), the

version allegedly used by the Defendant in this case, is more limited in scope than the post–1987 version and, therefore, more favorable to the Plaintiff. This distinction is not critical, however, because the court concludes that the Plaintiff's conduct could be characterized as being related to the delivery of "medical care or service" *or* an "item or service."

The Plaintiff argues that the terms "items or service" do not include the type of fiscal misconduct in which he allegedly engaged. Specifically, the Plaintiff claims that his alleged misconduct related to billing activity and not the delivery of an item or service under the Medicare and Medicaid programs. However, legislative history and case law demand a different conclusion.

In *Greene v. Sullivan*, 731 F.Supp. 835 (E.D.Tenn.1990), the plaintiff was convicted in a state proceeding for overcharging a Medicaid prescription. The plaintiff's argument to the district court was that his criminal offense was not related to the delivery of items or services; but merely a financial crime, occurring after delivery. Therefore, the plaintiff contended that his conviction fell under section 1320a–7(b), the permissive exclusion statute. The *Greene* court rejected the plaintiff's argument, holding that:

> The language of the statute itself as well as the legislative history indicate that the dichotomy was not intended to be between financial crimes and crimes in the delivery of services (such as direct patient abuse) but between program related crimes and other relevant crimes which did not defraud the program itself (such as fraud on insurance companies). There is no question that [the plaintiff's] crime resulted in a Medicaid overpayment and was a program-related crime triggering the mandatory exclusion under Section 1320a–7(a).

*Id.* at 838. As did the court in *Greene*, this court finds that substantial evidence existed for the Defendant to conclude that the Plaintiff's criminal conviction was a program-related crime.

In sum, the court finds summary judgment appropriate in this case because there are no genuine issues of material fact and because the Defendant's findings are supported by substantial evidence. Further, because the Defendant determined that the Plaintiff was "convicted" of a "program-related" crime, the Defendant was compelled pursuant to 42 U.S.C. § 1320a–7(a)(1) to exclude the Plaintiff from participation in the Medicaid and Medicare programs for a period of 5 years. Consequently, the Defendant's motion for summary judgment should be granted.

IT IS HEREBY ORDERED:

1. Because the court has determined that the Plaintiff was "convicted" of a "program-related" crime under section 1320a–7(a)(1) as a matter of law, the Defendant's Motion for Summary Judgment (Ct. Rec. 25) IS GRANTED.

2. The remaining issues in this case relate to the Plaintiff's allegation that his right to due process was violated in the administrative proceedings below. These due process issues raise pure legal questions. Therefore, summary judgement is the appropriate mechanism for their resolution. Further, because these issues raise pure legal questions, no discovery shall be permitted.

3. The Defendant shall file and serve on or before May 15, 1992 his motion for summary judgment addressing the Plaintiff's remaining claims. The Plaintiff shall respond to the Defendant's motion on or before June 1, 1992. The Defendant shall then have until June 8, 1992 to reply.

4. The Defendant's motion for summary judgment shall be heard at 8:30 a.m. on June 19, 1992, without oral argument, unless oral argument is requested.

IT IS SO ORDERED.