Carolyn S. WESTIN, Plaintiff,

v.

Donna E. SHALALA, Secretary, United States Department of Health and Human Services, Defendant.

No. 93–4061–SAC.

United States District Court, D. Kansas.

Feb. 2, 1994.

Frank S. Eschmann, Ascough, Eschmann & Oyler, P.A., Topeka, KS, for plaintiff.

Melanie D. Caro, Office of U.S. Atty., Topeka, KS, Ronald S. Luedemann, Jay A. Swope, Patricia L. Bossert, Asst. Regional Counsel, Dept. of Health & Human Services, Denver, CO, for defendant.

## MEMORANDUM AND ORDER

CROW, District Judge.

In this case, Carolyn S. Westin seeks judicial review of the Final Decision of the Secretary of the United States Department of Health and Human Services rendered under § 1128 of the Social Security Act, 42 U.S.C. § 1320a–7, *et seq.*, which excludes Westin from participation in the Medicare program (42 U.S.C. § 1395, *et seq.*) and state health care programs (as defined in 42 U.S.C. § 1320a–7) for a period of five years. Westin was excluded from such participation based upon the Secretary's conclusion that her plea of nolo contendere to one count of willful disregard of Colorado Department of Regulation, § 25–1–114 C.R.S., an unclassified misdemeanor, constituted a conviction of a criminal offense relating to neglect or abuse of patients in connection with the delivery of a health care item or service. Westin contends that this decision by the Secretary is not supported by substantial evidence. Wes-

tin argues in the alternative that her exclusion from participation violates the Double Jeopardy Clause.

The Secretary responds, arguing that her decision to exclude Westin from participation under § 1320–7(a)(2) is supported by substantial evidence. The Secretary also denies that the exclusion violates the Double Jeopardy Clause.

The court, having considered the file, the briefs of counsel, and the applicable law, is now prepared to rule.

### Chronology of Events

Carolyn Westin was a nursing home administrator at T & S Leasing, Inc., d/b/a Aspen Care Center West (ACCW). On December 17, 1984, Lucille Grundmeier, a patient at ACCW,[1] was found unconscious and wedged between the mattress and the bedrail in her room at ACCW. After emergency resuscitation, Grundmeier was airlifted to a hospital, where she died later that same day.

On November 18, 1985, a Grand Jury convened in Adams County District Court, Denver, Colorado, returned an indictment against ACCW, Victoria Tennant (ACCW's director of Nursing),[2] and Carolyn Westin. The indictment charged Westin in her capacity as the licensed administrator of the ACCW, a licensed nursing home in Adams County, Colorado. The indictment charged Westin with one felony and four misdemeanors.[3]

On September 25, 1986, Philip R. Roan, Chief Judge of the Adams County District Court, dismissed Count One, Count Three and Count Five against the plaintiff and the other named defendants. The court also ruled, however, that "[t]here is ample probable cause to support Count Two and Count Four of the indictment and the Court will, therefore, bind these counts over for arraignment." This ruling was appealed to the Supreme Court of Colorado. On November 23, 1988, the Supreme Court of Colorado affirmed the judgment of the district court.

On February 24, 1989, Westin executed a Stipulation for Deferred Judgment and Sentence in which she entered a plea of "nolo contendere" to the charge contained in Count IV of the indictment. Under the Stipulation for Deferred Judgment and Sentence, the entry of judgment of conviction and the imposition of sentencing was deferred for a period of one year.

The factual basis for Westin's plea of no contest to Count IV of the indictment, which charged her with willful disregard of Colorado Department of Health Regulations, § 25–1–114 C.R.S.,[4] was as follows:

1. Grundmeier had apparently been a patient at ACCW for several years. Grundmeier suffered from the advanced stages of Huntington's Disease, which is a degenerative disease of the nervous system. Grundmeier was incapacitated by the disease and was a "total care patient," as she was unable to control her own bodily movements.

2. The ALJ who sustained Westin's exclusion also sustained Tennant's exclusion. In evaluating Westin's challenge to her exclusion, the ALJ found the facts of Westin's case to be "essentially identical to the facts in *Tennant*."

On appeal to the DAB Appellate Division, Westin argued that the ALJ failed to consider her unique contentions in arriving at his decision in her case. Although the DAB Appellate Division criticized the ALJ's "wholesale incorporation by reference of his legal analysis from the *Tennant* case," the DAB Appellate Division adopted the ALJ's findings of fact and conclusions of law, except for one paragraph which was stricken as unsupported. Westin's five-year exclusion was affirmed.

3. Count I charged "Third Degree Assault Upon a Person Sixty Years of Age or Older; Section 18–3–204 C.R.S. (1978 RepVol) and Section 18–3–209 C.R.S. (1984 CumSupp)," a Class 5 Felony. Count II charged "Endangering the Welfare of an Incompetent Person; Section 18–13–103 C.R.S. (1978 RepVol)," a Class 1 Misdemeanor. Count III charged "Reckless Endangerment; Section 18–3–208 C.R.S. (1978 RepVol)," a Class 3 Misdemeanor. Count IV charged "Willful Disregard of Colorado Department of Health Regulation; Section 25–1–114 C.R.S. (1982 RepVol)," an Unclassified Misdemeanor. Count V charged "Concealing Death, Section 18–8–109 C.R.S. (1978 RepVol)," a Class 1 Misdemeanor.

4. C.R.S. 25–1–114 provides in pertinent part:

25–1–114. **Unlawful acts—penalties.** (1) It is unlawful for any person, association or corporation, and the officers thereof:

. . . .

(b) To fail to make or file reports required by law or rule of the board relating to the existence of disease or other facts and statistics relating to the public health.

## FACTUAL BASIS

In December of 1984, Carolyn Westin was the Administrator at Aspen Care West and Victoria Tennant was the Director of Nursing at this facility. At all pertinent times, they acted in these specific capacities.

On December 17, 1984, Lucille Grundmeier's unconscious body was discovered wedged between the mattress and bedrail in her room at Aspen Care West. After emergency resuscitation, Mrs. Grundmeier was airlifted to St. Anthony's North. After Mrs. Grundmeier's transport, Victoria Tennant and Carolyn Westin were present when Charge Nurse Rush wrote her nurse's notes, which did not mention the position in which Mrs. Grundmeier was found.

Frances DeLeon, R.N., has previously testified that Nurse Ruth told her that Victoria Tennant and Carolyn Westin told Rush not to mention how Mrs. Grundmeier was found (Rush has never testified to this effect.) No incident report was prepared.

Medical Records Supervisor Sharon Wasinger has previously testified that when she realized a few days later that no incident report had been filed, she told either Victoria Tennant or Carolyn Westin that one should be prepared. (She does not recall which woman she told.) Wasinger has previously testified that she was told that no incident report was necessary, because "the incident was not unusual."

Records Consultant Nancy Weber has previously testified that Sharon Wasinger told Weber that Wasinger had discussed the lack of an incident report with Director of Nursing Victoria Tennant.

Paul Daraghy and Sterling Drumwright would testify that at all relevant times herein there was a regulation promulgated by the Colorado Department of Health in the Code of Colorado Regulations at 6 CCR 1011–1 Ch. V § 4.5.4 that required

"Accidents and incidents resulting in possible patient injury shall be reported on special report forms. The report shall include, date, time and place of incident; circumstances of the occurrence, signature of witness; time doctor was notified; physician's report; signature of person making the report. A copy of report shall be filed in the patient's medical record."

At all times relevant thereto T & S Leasing, Inc. d/b/a Aspen Care Center West was a long term care facility serving both skilled and intermediate patients licensed by the Colorado Department of Health. Aspen Care West was located in the City of Westminster, County of Adams, State of Colorado.

*People v. T & S Leasing, et al.*, 85CR1126 (Adams County District Court).

Rec'd from Mary Risko, Ass. AG, MFCU, 2/23/89, by Sheila H. Meer, P.C. Copies to Burke, Ciancio 2/23/89.

Westin apparently complied with the conditions set forth in the stipulation for deferred judgment and sentence. On March 13, 1990, upon motion of the district attorney, the court dismissed the case against Westin.

On May 24, 1991, the Inspector General notified Westin that she was going to be excluded for five years from participation in the Medicare and any state health care program due to her conviction in the District Court of Adams County, Colorado, of a criminal offense relating to the neglect or abuse of patients in connection with the delivery of a health care item or service. Westin was also informed that the exclusion under 42 U.S.C. § 1320a–7(a)(2) was mandatory and that the exclusion had national effect.

On May 30, 1991, Westin appealed the Inspector General's decision to the HHS Departmental Appeals Board (DAB). On August 24, 1992, an Administrative Law Judge, having considered the exhibits submitted by the I.G.,[5] the parties' arguments, and the applicable law and regulations, sustained the

---

6 CCR (**THE CODE OF COLORADO REGULATIONS**) 1011–1 Ch. V section 4.5.4 provides: Accidents and incidents resulting in possible patient injury shall be reported on special report forms. The report shall include date, time and place of incident; circumstances of the occurrence, signature of witness; time doctor was notified; physician's report; signature of person making the report. A copy of report shall be filed in the patient's medical record.

5. Westin did not submit any exhibits.

exclusion imposed. On September 2, 1992, Westin appealed that determination to the Appellate Division of the DAB. On January 19, 1993, the DAB Appellate Division issued a final decision, affirming the ALJ's decision. On March 19, 1993, Westin timely appealed that decision to this court.

## Standard of Review

"Pursuant to 42 U.S.C. § 1320a–7(f), which incorporates 42 U.S.C. § 405, this court has jurisdiction to review administrative decisions to ensure that sufficient evidence exists to support the decision, and that the proper legal standard was used." *Travers v. Sullivan*, 791 F.Supp. 1471, 1474 (E.D.Wash.1992) (citing *Higbee v. Sullivan*, 935 F.2d 1038, 1041 (9th Cir.1991)). "The court's review, however, is limited to the Secretary's final decision, the administrative record, and the pleadings." *Travers*, 791 F.Supp. at 1474.

Title 42, section 405(g) provides that "[t]he findings of the Secretary as to any fact, if supported by substantial evidence, shall be conclusive." Substantial evidence is more than a scintilla and is that evidence which a reasonable mind might accept as adequate to support a conclusion. *Richardson v. Persales*, 402 U.S. 389, 401–02, 91 S.Ct. 1420, 1427–28, 28 L.Ed.2d 842 (1971); *Ray v. Bowen*, 865 F.2d 222, 224 (10th Cir. 1989); *see Travers*, 791 F.Supp. at 1474 (Secretary's factual determinations will be upheld if they are supported by substantial evidence).

## Exclusion Under § 1320a–7(a)(2)

Title 42, § 1320a–7 provides in pertinent part:

**(a) Mandatory exclusion**

The Secretary shall exclude the following individuals and entities from participation in any program under subchapter XVIII [42 USCS §§ 1395 *et seq.*] and shall direct that the following individuals and entities be excluded from participation in any State health care program (as defined in subsection (h)):

.    .    .    .    .

**(2) Conviction relating to patient abuse**

Any individual or entity that has been convicted, under Federal or State law, of a criminal offense relating to neglect or abuse of patients in connection with the delivery of a health care item or service.

.    .    .    .    .

**(c) Notice, effective date, and period of exclusion**

.    .    .    .    .

**(3)(B)** In the case of an exclusion under subsection (a) * * *, the minimum period of exclusion shall be not less than five years, . . .

.    .    .    .    .

**(i) "Convicted" defined**

For purposes of subsections (a) and (b) * * *, an individual or entity is considered to have been "convicted" of a criminal offense—

(1) when a judgment of conviction has been entered against individual or entity by a Federal, State, or local court, regardless of whether there is an appeal pending or whether the judgment of conviction or other record relating to criminal conduct has been expunged;

(2) when there has been a finding of guilt against the individual or entity by a Federal, State, or local court;

(3) when a plea of guilty or nolo contendere by the individual or entity has been accepted by a Federal, State, or local court; or

(4) when the individual or entity has entered into participation in a first offender, deferred adjudication, or other arrangement or program where judgment of conviction has been withheld.

In short, to uphold the mandatory exclusion the Secretary's decision must be supported by substantial evidence that Westin was (1) convicted of a criminal offense (2) relating to neglect or abuse of patients (3) in connection with the delivery of a health care item or service.

The court will consider whether each of these elements is supported by substantial evidence.

**Was Westin convicted of a criminal offense within the definition of § 1320a–7(i)?**

■ Westin does not specifically contest the Secretary's determination that her plea of no contest in Colorado state court constitutes a conviction within the meaning of § 1320a–7(i). Westin's arrangement with the Colorado state court for deferred judgment and sentencing in exchange for her plea of nolo contendere appears to clearly fall within the definition of "conviction" as found in § 1320a–7(i)(4). *See Travers,* 791 F.Supp. at 1477–1480 (substantial evidence in the record for the court to conclude that the plaintiff was "convicted" as defined under § 1320a–7(i)(4)).

**Was Westin's conviction of a criminal offense "relating to neglect or abuse of patients?"**

■ Westin argues that there is no evidence that she actually neglected or abused any patient. Westin also argues that nothing in the Factual Basis submitted at the time the Stipulation for Deferred Judgment and Sentencing was entered supports a determination that she was convicted of a crime relating to the neglect or abuse of patients. Westin also contends that even if ALJ correctly considered the information found in Count IV of the indictment, there is still nothing to suggest that any patients were neglected or abused.

The Secretary responds that it is clear that Westin was convicted of a crime relating to neglect of a patient. The Secretary contends that there is no requirement that she prove that a patient was actually neglected or abused. The Secretary contends that she must only demonstrate that the criminal offense *related* to *either* patient abuse or neglect. The Secretary contends that relying on Westin's stipulation it is clear that Westin's conviction related to the neglect or abuse of patients.

Westin was convicted of a crime "relating to neglect or abuse of patients." Contrary to

Westin's argument, there is no requirement that the Secretary demonstrate that actual neglect or abuse of patients occurred, nor is there a requirement that the individual or entity be convicted of an actual offense of patient neglect or abuse. The phrase "relating to" clearly encompasses a broader range of conduct than actual neglect or abuse.[6] Westin's failure to file a report with the Colorado Department of Health or to place a copy of that report in Grundmeier's medical records related to the neglect of a patient.

The court is satisfied that the record supports the Secretary's determination that Westin was convicted of a crime "relating to neglect or abuse of patients."

**Was Westin's conviction of a criminal offense relating to neglect or abuse of patients "in connection with the delivery of a health care item or service?"**

Westin argues that even if she was convicted of a crime "relating to neglect or abuse of patients" that there is no evidence that any such patients were recipients of Medicaid or Medicare benefits. Westin also argues there is no evidence that makes the necessary connection of her plea of no contest with the delivery of a health care item or service.

The Secretary responds although she is required to demonstrate that Westin's criminal offense related to neglect or abuse of patients in connection with the delivery of a health care item or service, she is not required under an exclusion under § 1320a–7(a)(2) to also demonstrate that the delivery of the health care item or service was to patients who were persons who were receiving Medicade or Medicare benefits. The Secretary contends that it is "obvious" from the record that Westin's criminal conviction relating to neglect or abuse of patients was in connection with the delivery of a health care item or service.

In support of her argument that the Secretary must prove the crime of which she was convicted was connected with the delivery of

6. Even in the criminal context, phrases similar to the phrase "relating to," such as the phrase "in relation to," encompass a wide range of conduct. *See, e.g., United States v. Harmon,* 996 F.2d 256, 256–257 (10th Cir.1993) (phrase "in relation to" as used in 18 U.S.C. § 924(c)(1) is expansive; "in relation to" means that the firearm had a role in, or facilitated, or had the potential of facilitating, a drug trafficking crime.).

a health care item or service of patients who received Medicade or Medicare benefits, Westin cites *Catherine Dodd v. the Inspector General, Medicare & Medicaid Guide,* (CCH) ¶ 40243 (March 16, 1992). In *Dodd,* a nurse convicted of converting medicine provided to nursing home patients to her own use was notified by the I.G. that she was being excluded from participation in Medicare and State health care programs for a period of five years. The nurse appealed and the HHS Departmental Appeals Board reversed the I.G.'s exclusion based upon the absence of evidence connecting a Medicade or Medicare item or service and the nurse's crime.

■ *Dodd* does not support the argument Westin seeks to advance. In *Dodd,* the nurse was excluded by the I.G. under § 1320a–7(a)(1), not under § 1320a–7(a)(2). Although § 1320a–7(a)(1) provides for a mandatory exclusion for "[a]ny individual or entity that has been convicted of a criminal offense related to the delivery of an item or service under subchapter XVIII of this chapter or under any State health care program," *see Travers,* 801 F.Supp. at 404 ("a conviction under § [1320a–7](a)(1) must relate to delivery of an item or service under *Medicare or Medicade or any State health care program....*"), section 1320a–7(a)(2), the section under which Westin was excluded, imposes no such condition. Under § 1320a–7(a)(2), the Secretary is authorized to exclude persons convicted of criminal offenses relating to neglect or abuse of patients in connection with the delivery of a health care item or service, irrespective of the fact that such item or service was not related to Medicare or other State health care systems.

The legislative history of § 1320a–7(a)(2) provides further support for this interpretation of the plain language of the statute:

Under the current law, the Secretary does not have the authority to exclude persons who have been convicted of criminal offenses which are not related to Medicare or other State health care programs. This provision would give the Secretary the authority to protect Medicare and the State health care program beneficiaries from individuals or entities that have already been tried and convicted of offenses which the Secretary concludes entailed or resulted in neglect or abuse of other patients and whose continued participation in Medicare and the State health programs would therefore constitute a risk to the health and safety of patients in those programs.

S.Rpt. No. 109, 100th Cong., 1st Sess. 6 (1987), *reprinted in* 1987 U.S.C.C.A.N. 686–687.

Having concluded that a criminal conviction need not be connected to the delivery of a Medicare or other State health care programs item or service to serve as a basis of exclusion under § 1320a–7(a)(2), the court will now turn to Westin's argument that the record does not support a finding that her conviction was "in connection with the delivery of a health care item or service."

■ As the Secretary suggests, Westin's conviction was "in connection with the delivery of a health care item or service." Westin entered a plea of no contest to willfully disregarding a Colorado public health law. Under that law, Westin, as an administrator of a nursing home, was required to (1) report all accidents and injuries "resulting in possible patient injury" to the Colorado Department of Health; and (2) file a copy of that report in the patient's medical record. The evidence is clear from the record that this conviction for failing to report the accident or incident occurred while Grundmeier was a patient at ACCW, and that the conviction was connected to the medical services ACCW and its employees provided to Grundmeier.

In sum, the court is satisfied that the record supports the Secretary's conclusion that Westin's conviction was "in connection with the delivery of a health care item or service."

### Double Jeopardy

■ Westin argues in the alternative that the exclusion violates the Double Jeopardy Clause of the Fifth Amendment.[7] The Sec-

---

7. The Double Jeopardy Clause of the Fifth Amendment provides: "nor shall any person be subject for the same offence to be twice put in

retary argues that the exclusion does not violate the Double Jeopardy Clause because (1) the Double Jeopardy Clause is a bar to two punitive sanctions, and the Inspector General's exclusion did not constitute a second punitive sanction; and (2) a federal prosecution is not barred by a prior state prosecution of the same person for the same acts. The Secretary's analysis is correct.

"The Fifth Amendment's guarantee against double jeopardy 'protects against multiple punishments for the same offense.'" *Mansfield v. Champion,* 992 F.2d 1098, 1100 (10th Cir.1993) (quoting *North Carolina v. Pearce,* 395 U.S. 711, 717, 89 S.Ct. 2072, 2076, 23 L.Ed.2d 656 (1969)); *see United States v. Halper,* 490 U.S. 435, 440, 109 S.Ct. 1892, 1897, 104 L.Ed.2d 487 (1989) ("[T]he Double Jeopardy Clause protects against three distinct abuses: a second prosecution for the same offense after acquittal; a second prosecution for the same offense after conviction; and multiple punishments for the same offense."). The Double Jeopardy Clause applies only to punitive sanctions. *See Id.* at 448–449, 109 S.Ct. at 1901–1902; *Manocchio v. Kusserow,* 961 F.2d 1539, 1541 (11th Cir. 1992). In *Halper,* the Supreme Court held that "under the Double Jeopardy Clause a defendant who already has been punished in a criminal prosecution may not be subjected to an additional civil sanction to the extent that the second sanction may not fairly be characterized as remedial, but only as a deterrent or retribution." *Id.* 490 U.S. at 448–449, 109 S.Ct. at 1902.

In *Manocchio,* the Eleventh Circuit rejected a medical doctor's attack against the mandatory exclusion of § 1320a–7 as violative of the Double Jeopardy Clause. In *Manocchio,* a medical doctor had entered a plea of guilty to making fraudulent demand against the United States by submitting a fraudulent Medicare claim in the amount of $62.40. The Office of the Inspector General subsequently excluded the doctor from participation in Medicare programs for a period of five years. The court of appeals concluded that the mandatory exclusion under § 1320a–7 is remedial, not punitive, in nature:

In order to determine whether the exclusionary period is punitive or remedial, the court must look at the congressional intent at the time of passage of the statute. An examination of the legislative history of the five-year minimum mandatory exclusion period in section 1320a–7 establishes that the sanction is civil and remedial. The Senate Finance Committee report states,

> the basic purpose of the Medicare and Medicaid Patient and Program Protection Act is to improve the ability of the Secretary and the Inspector General of [HHS] to protect Medicare, Medicaid, [and other social services programs] from fraud and abuse, and to protect the beneficiaries of those programs from incompetent practitioners and from inappropriate or inadequate care.

S.Rep. No. 109, 100th Cong., 1st Sess. 1–2 (1987) (hereinafter Senate Report), reprinted in 1987 U.S.C.C.A.N. 682. The committee report also states, however, that the law "should provide a clear and strong deterrent against the commission of criminal acts." Senate Report at 5, 1987 U.S.C.C.A.N. at 686. While the desire to provide a deterrent is a punitive goal, we find that the legislative history, taken as a whole, demonstrates that the primary goal of the legislation is to protect present and future Medicare beneficiaries from the abusers of these programs. Therefore, since the legislative intent of the exclusionary period is to protect the public, the sanction is remedial, not punitive.

961 F.2d at 1541–1542.

Other courts considering this same issue have concluded that the mandatory exclusion under § 1320a–7(a) does not violate the Double Jeopardy Clause. *See Crawford v. Sullivan,* No. 92–C–3926, 1993 WL 122294, 1993 U.S.Dist. LEXIS 906 (N.D.Ill. January 28, 1993) (plaintiff's exclusion under § 1320a–7(a) does not violate the double jeopardy or ex post facto clauses of the United States Constitution); *Greene v. Sullivan,* 731 F.Supp. 838 (E.D.Tenn.1990) (mandatory exclusion does not implicate double jeopardy; goals of exclusion are clearly remedial and

jeopardy of life or limb...." U.S. Const. amend. V.

include protecting beneficiaries, maintaining program integrity, fostering public confidence in the program).

 In any event, the State of Colorado's prosecution of Westin would not preclude a subsequent prosecution by the federal government for same conduct. The Double Jeopardy Clause does not preclude multiple prosecutions for the same conduct by separate sovereigns. In *United States v. Raymer*, 941 F.2d 1031 (10th Cir.1991), the Tenth Circuit discussed the dual sovereign doctrine:

> Double jeopardy scrutiny is appropriate when there are "successive prosecutions arising from virtually the same conduct involving the same actors and overlapping time frames." [*United States v.*] *Felix*, 926 F.2d [1522] at 1531 [ (10th Cir.1991) ]. It is well established, however, that a subsequent federal prosecution based upon the same conduct as a terminated state prosecution does not violate the double jeopardy clause of the fifth amendment. *Abbate v. United States*, 359 U.S. 187, 195, 3 L.Ed.2d 729, 79 S.Ct. 666 (1959); *United States v. Lanza*, 260 U.S. 377, 382, 67 L.Ed. 314, 43 S.Ct. 141, 142 (1922). The dual sovereignty doctrine rests upon the notion that laws of separate sovereigns are indeed separate and that one act may violate the laws of each; accordingly, prosecution by each cannot be for the same offense and double jeopardy concerns are not implicated. *Heath v. Alabama*, 474 U.S. 82, 88, 88 L.Ed.2d 387, 106 S.Ct. 433, 437 (1985).

941 F.2d at 1037. *See U.S. v. A Parcel of Land with a Bldg. L. Thereon*, 884 F.2d 41, 43 (1st Cir.1989) ("The doctrine of Double Jeopardy does not apply to suits brought by separate sovereigns, even if both are criminal suits for the same offense.").

In sum, Westin's claim that the mandatory exclusion of § 1320a–7(a)(2) violates the Double Jeopardy Clause is without merit.

IT IS THEREFORE ORDERED that the court denies the relief sought in Westin's "Petition for Judicial Review" (Dk. 1).

IT IS FURTHER ORDERED that the "Defendant's Motion to Affirm Administra-

tive Decision" (Dk. 8) is granted. The final decision of the defendant is affirmed.