**Michael TRAVERS, M.D., Plaintiff,**

v.

**Louis W. SULLIVAN, Secretary of Health and Human Services, Defendant.**

**No. CS–91–232–JLQ.**

United States District Court, E.D. Washington.

June 24, 1992.

Kenneth Joel Haber, Rockville, Md., for plaintiff.

Frank A. Wilson, Asst. U.S. Atty., Spokane, Wash., Lucille G. Meis, Asst. Regional Counsel, Office of Gen. Counsel, Dept. of Health and Human Services, Denver, Colo., for defendant.

## MEMORANDUM OPINION AND ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

QUACKENBUSH, Chief Judge.

BEFORE THE COURT is Defendant's motion for summary judgment (Ct.Rec. 38), heard with telephonic argument on June 19, 1992. The Plaintiff was represented by Kenneth Joel Haber; the Defendant appeared through Assistant United States Attorney Frank A. Wilson, and general counsel for the Department of Health and Human Services, Denver, Colorado, Lucille Meis.

### I. FACTUAL AND PROCEDURAL BACKGROUND

On December 16, 1988, the Plaintiff was charged in Utah state court with knowingly filing a false medical claim. Specifically, the Plaintiff was accused of using the wrong billing code number in claiming reimbursement for a Medicaid claim, resulting in misrepresentation of the services rendered by him.

The Plaintiff pleaded "no contest" to the charge. In his plea agreement, the Plaintiff agreed to pay restitution, investigation costs, and a civil penalty. (A.R. 186–88.) The plea agreement further provided that if the Plaintiff failed to make the agreed payment within 60 days, the court would accept his no-contest plea and proceed to schedule the matter for imposition of sentence. *Id.* The agreement also provided that if the Plaintiff complied with the terms of the agreement, the court would allow him to withdraw his no-contest plea and dismiss the charge against him with prejudice. *Id.* In its "Order In Re Plea Agreement," the Utah state court approved the Plaintiff's plea agreement "as a 1st offender disposition of the case." (A.R. 190.) In addition, the court took the Plaintiff's plea of "no contest" under advisement. *Id.*

On January 9, 1989, the Plaintiff notified the Utah court that the required payments had been made. On the same day, the court entered an order permitting the Plaintiff to withdraw his plea and dismissing, with prejudice, the criminal charges. On June 20, 1989, James F. Patterson, Director of Health Care Administration Sanctions, Office of Inspector General, United States Department of Health and Human Services, notified the Plaintiff that he was being excluded from participation in the Medicaid/Medicare programs and all state health-care systems for a mandatory period of 5 years under section 1128(a)(1) of the Social Security Act, 42 U.S.C. § 1320a–7(a)(1). The notification informed the Plaintiff that the exclusion was based on his conviction of a criminal offense related to the delivery of an item or service under the Medicaid program. (A.R. 204.)

The 5–year exclusion was affirmed upon administrative review by the Department of Health and Human Services Departmental Appeals Board (Appeals Board). The

Plaintiff then filed a complaint with this court for judicial review and for injunctive and declaratory relief. Specifically, the Plaintiff alleges that his agreement with the State of Utah did not amount to a conviction of a criminal offense related to the delivery of an item or service under the Medicaid program, thus his mandatory 5–year exclusion from the Medicaid program was not justified. Further, the Plaintiff alleges that his right to due process was violated in the administrative proceedings below.

On February 3, 1992, this court entered an order granting the Defendant's motion for a protective order. The protective order prevented the Plaintiff from engaging in discovery pending the resolution of the Defendant's initial summary judgment motion because the court found that the issue raised in the Defendant's motion involved a pure legal question. That question, which was before this court on April 10, 1992, was whether the Plaintiff was "convicted" of a "program-related" crime under 42 U.S.C. § 1320a–7(a)(1). In an order filed on April 23, 1992 (Ct.Rec. 35), the court granted the Defendant's summary judgment motion with respect to this issue. 791 F.Supp. 1471 (E.D.Wash.1992). However, the Defendant's initial summary judgment motion did not address the due process issues contained in the Plaintiff's complaint. Consequently, the court directed the Defendant to file an additional summary judgment motion addressing the remaining issues, which he did on May 15, 1992. Those remaining issues are now before the court.

## II. JURISDICTION

Pursuant to 42 U.S.C. § 1320a–7(f), which incorporates 42 U.S.C. § 405, this court has jurisdiction to review administrative decisions to ensure that sufficient evidence exists to support the decision, and that the proper legal standard was used. *Higbee v. Sullivan*, 935 F.2d 1038, 1041 (9th Cir.1991). The court's review, however, is limited to the Secretary's final decision, the administrative record, and the pleadings. *Id.* The Defendant's factual determinations, if any, will be upheld if they are supported by substantial evidence. 42 U.S.C. § 405(g).

## III. SUMMARY JUDGMENT STANDARD

The purpose of summary judgment is to avoid unnecessary trials when there is no dispute as to the material facts before the court. *Zweig v. Hearst Corp.*, 521 F.2d 1129 (9th Cir.), *cert. denied*, 423 U.S. 1025, 96 S.Ct. 469, 46 L.Ed.2d 399 (1975). The moving party bears the burden of informing the court of the basis for its motion, together with evidence demonstrating the absence of any genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323, 106 S.Ct. 2548, 2553, 91 L.Ed.2d 265 (1986).

The moving party is entitled to summary judgment when, viewing the evidence and the inferences arising therefrom in favor of the nonmoving party, there are no genuine issues of material fact in dispute, and they are entitled to judgment as a matter of law. Fed.R.Civ.P. 56(c); *Semegen v. Weidner*, 780 F.2d 727 (9th Cir.1985). However, where reasonable minds could differ on the material facts at issue, summary judgment is not appropriate. *See v. Durang*, 711 F.2d 141 (9th Cir.1983).

When evaluating evidence offered to resist summary judgment, the Ninth Circuit distinguishes between direct and circumstantial evidence. *See T.W. Elec. Serv., Inc. v. Pacific Elec. Contractors Ass'n*, 809 F.2d 626, 630–31 (9th Cir.1987). Where the nonmoving party has come forward with direct evidence contrary to that offered by the movant, a credibility issue is raised. Credibility determinations are for the trier of fact and, therefore, are not appropriately resolved by summary judgment. *McLaughlin v. Liu*, 849 F.2d 1205, 1207 (9th Cir.1988). Where direct evidence produced by the moving party conflicts with direct evidence produced by the nonmoving party, the court must assume the truth of the evidence set forth by the nonmoving party with respect to that fact. *T.W. Elec.*, 809 F.2d at 631–32. However, when the only evidence offered in opposition to the motion for summary judgment

is circumstantial evidence, then the court may inquire into the plausibility of inferences drawn from that evidence. *Id.*

In evaluating the appropriateness of summary judgment, three steps are necessary: (1) determination of whether a fact is material; (2) determination of whether there is a genuine issue for the trier of fact, as determined by the documents submitted to the court; and (3) consideration of that evidence in light of the appropriate standard of proof. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 247-48, 106 S.Ct. 2505, 2509-10, 91 L.Ed.2d 202 (1986). As to materiality, "only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment. Factual disputes which are irrelevant or unnecessary will not be counted." *Id.* at 248, 106 S.Ct. at 2510. When there is a complete failure of proof concerning an essential element of the nonmoving party's case, all other facts are rendered immaterial, and the moving party is entitled to judgment as a matter of law. *Celotex,* 477 U.S. at 323, 106 S.Ct. at 2552.

Even if a fact is determined to be material, summary judgment is still inappropriate if the dispute about that fact is genuine, that is, if the evidence is such that a reasonable jury could return a verdict for the nonmoving party. *Anderson,* 477 U.S. at 248, 106 S.Ct. at 2510. However, there is no genuine issue of fact if, on the record taken as a whole, a rational trier of fact could not find in favor of the party opposing the motion. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 587, 106 S.Ct. 1348, 1356, 89 L.Ed.2d 538 (1986).

A party opposing a motion for summary judgment "must do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita,* 475 U.S. at 586, 106 S.Ct. at 1355. In order to survive a supported motion for summary judgment, the nonmoving party must set forth "specific facts showing that there is a genuine issue for trial." Fed.R.Civ.P. 56(e). In other words, once the moving party has met its burden, the party oppos-

ing the motion may not rest upon the allegations or denials contained in his pleadings. *Anderson,* 477 U.S. at 248, 106 S.Ct. at 2510.

"[A]t the summary judgment stage the judge's function is not himself to weigh the evidence and determine the truth of the matter, but to determine whether there is a genuine issue for trial." *Anderson,* 477 U.S. at 249, 106 S.Ct. at 2510. "When determining if a genuine factual issue ... exists, ... a trial judge must bear in mind the actual quantum and quality of proof necessary to support liability...." *Id.* at 254, 106 S.Ct. at 2513. This necessitates application of the substantive evidentiary standard of proof that would apply at the trial on the merits. *Id.* at 252, 106 S.Ct. at 2512. "Thus, in ruling on a motion for summary judgment, the judge must view the evidence presented through the prism of the substantive evidentiary burden." *Id.* at 254, 106 S.Ct. at 2513. The question is, therefore, "whether a jury could reasonably find *either* that the plaintiff proved his case by the quality and quantity of evidence required by the governing law *or* that he did not." *Id.* (Emphasis in original.) The standard which governs the trial judge's determination as to whether a genuine issue exists is provided by the applicable evidentiary standards. *Id.* at 255, 106 S.Ct. at 2513. This being a civil case, the applicable evidentiary standard is a preponderance of the evidence.

## IV. DISCUSSION

The following issues are raised by the Defendant in his second motion for summary judgment: (1) whether the Defendant improperly delegated to the Inspector General the responsibility of imposing sanctions and exclusions from the Medicare and Medicaid programs; (2) whether the Defendant had to adopt regulations implementing the 1987 revisions to 42 U.S.C. § 1320a-7 before an exclusion could be made pursuant to that section; (3) whether the Defendant relied upon "secret, unpublished rules" to exclude the Plaintiff from participation in the Medicare and Medicaid programs; (4) whether the Defendant has de-

prived the Plaintiff of his constitutional right to due process, and deprived him of a full and fair hearing under the Administrative Procedures Act, the Medicare statute, and the United States Constitution; and (5) whether the court, in its order granting the Defendant's initial summary judgment motion, afforded improper deference to the administrative decision-makers. Each of these issues will be addressed in turn.

## A. *Improper Delegation of Authority*

■ The Secretary of Health and Human Services (Secretary) is primarily responsible for the administration of the Government's various health-care programs established under the Social Security Act. Many of the responsibilities for administering the Medicare and Medicaid programs were originally delegated to the Administrator of the Health Care Financing Administration, including the authority to detect, prosecute, and punish fraudulent activities under the programs. *See Greene v. Sullivan*, 731 F.Supp. 835, 837 (E.D.Tenn.1990). On April 18, 1983, this responsibility was transferred to the Office of the Inspector General. *Id.* The Office of the Inspector General was created by Congress to detect and prevent fraud and abuses in the Medicare and Medicaid programs. *See* 5 U.S.C.App. § 2(2). Congress authorized the Secretary to transfer to the Inspector General "the offices, units, or other components, and the functions, powers, or duties thereof, that [the Secretary] determines are properly related to the functions of the Office of the Inspector General and would, if so transferred, further the purposes of this section." 5 U.S.C.App. § 8E(b). However, Congress limited the ability of the Secretary to delegate when it stated that "[t]here shall not be transferred to [the Inspector General] any program operating responsibilities." *Id.*

In the case at bar, the Plaintiff points out that the Defendant delegated to the Inspector General the authority to exclude individuals from participation in the Medicare and Medicaid programs. According to the Plaintiff, this delegation resulted in a transfer of a program operating responsi-

bility, which is prohibited by 5 U.S.C.App. § 8E(b).

When Congress revised the exclusion statute in 1987, it noted that the Secretary's delegation to the Inspector General of exclusion sanction authority was proper. Specifically, Congress stated:

Under current practice, the Secretary has delegated all existing suspension, exclusion, and civil monetary penalty authorities to the Department's Inspector General. The Committee believes that this delegation of authority by the Secretary is entirely consistent with the statutory mandate of the HHS Inspector General ... and has resulted in the efficient administration of these authorities. The Committee expects the Secretary both to continue this existing practice and to delegate all new statutory exclusion authorities created by this bill to the Department's Inspector General.

S.Rpt. No. 100–109, 100th Cong., 1st Sess. 5, *reprinted in* 1987 U.S.Code Cong. & Admin.News 682, 695. Moreover, the court in *Greene v. Sullivan*, 731 F.Supp. 835 (E.D.Tenn.1990) held:

While Congress did not define "program operating responsibilities," the legislative history of the Inspector General statute suggests that Congress was referring to day-to-day, "hands-on" responsibilities for the overall administration of the Department's health and welfare programs. The history makes it clear that Congress fully intended the Inspector General to detect and prevent fraud and abuse in program operations.

*Id.* at 837. The court in *Greene* saw nothing inappropriate in the Secretary's delegation of the exclusion sanction authority to the Inspector General, and neither does this court.

The Plaintiff argues that the 1987 Congressional comments concerning delegation should be disregarded because the provision at issue was enacted in 1976. The Plaintiff alleges that the 1987 Congress had no knowledge of what a prior Congress intended when it enacted a piece of legislation.

█ The Plaintiff is correct that the views of a subsequent Congress cannot provide a *controlling basis* from which to infer the purposes of an earlier Congress. *See Haynes v. United States,* 390 U.S. 85, 87 n. 4, 88 S.Ct. 722, 725 n. 4, 19 L.Ed.2d 923 (1968). While the Supreme Court has acknowledged that the views of subsequent Congresses cannot override the unmistakable intent of the enacting one, it has also held that "such views are entitled to significant weight, [citation omitted] and particularly so when the precise intent of the enacting Congress is obscure." *Seatrain Shipbuilding Corp. v. Shell Oil Co.,* 444 U.S. 572, 596, 100 S.Ct. 800, 813, 63 L.Ed.2d 36 (1980). *See also Morgan Guaranty Trust Co. v. American Savings and Loan Assoc.,* 804 F.2d 1487, 1492 (9th Cir.1986) (While "subsequent legislative history is not conclusive, we are entitled to give it weight when the meaning of the statute and original congressional intent are in doubt").

In the case at bar, the court finds that Congress has not defined "program operating responsibilities." *See Greene,* 731 F.Supp. at 837. Further, the court concludes that the intent of the original Congress is unclear. As a result, the court affords due weight to the subsequent congressional intent quoted herein and finds that the Secretary's delegation of the exclusion sanction authority to the Inspector General was not a transfer of a program-operating responsibility. Consequently, the Plaintiff's improper delegation argument is without merit and should be dismissed.

### B. *Defendant's Failure to Publish Intended Statutory Application*

In his complaint, the Plaintiff alleges that the Defendant violated the Administrative Procedures Act (APA) when he failed to publish regulations explaining the Inspector General's intended application of 42 U.S.C. § 1320a–7(i)(4). The Plaintiff claims this is critical because neither "first offender" nor "deferred adjudication" is defined in the statute itself, nor in any regulation. The Plaintiff's argument centers on the distinction between a deferred prosecution, which is not covered by § 1320a–7(i)(4), and a deferred adjudication, which is. The Plaintiff asserts that the Inspector General's office did not acknowledge that it distinguished between deferred adjudications and deferred prosecutions until the parties were in front of the Appeals Board, and claims that if he had notice earlier in the proceeding of what constituted a deferred prosecution, then the state court record could have been clarified to avoid the situation now before this court.

The Plaintiff also alleges that the Utah state Medical Fraud Control Unit (MFCU), which is allegedly funded almost entirely by the Defendant upon certification by the Inspector General, should have been aware of the distinction between deferred adjudication and deferred prosecution. The Plaintiff argues that the MFCU should have informed him that the parties were not proceeding under a deferred prosecution in the Utah state court proceeding. It is asserted that notice of such a distinction would not be in the interest of the Inspector General's office because of the incentive the Inspector General's office allegedly has in excluding as many individuals as possible in order to fulfill its quotas. It is this illegal quota system that the Plaintiff believes enticed the Inspector General into creating a system which violates the APA notice requirements contained in 5 U.S.C. § 553(d). The Plaintiff implicitly argues that the APA mandated the promulgation of additional regulations before the Defendant could apply the exclusion authority contained in the 1987 revisions to § 1320a–7.

In 1977, Congress enacted the Medicare-Medicaid Anti-fraud and Abuse Amendments, which required the Secretary to suspend any physician or individual practitioner convicted of a "criminal offense related to such physician's or practitioner's involvement in the Medicare and Medicaid programs." *Greene,* 731 F.Supp. at 837. This court agrees with the court in *Greene* when it stated that:

> [t]he 1987 amendments simply imposed a five-year minimum period of exclusion for program-related convictions. These

provisions are self-executing and do not require the formation of additional regulations prior to their application. Adequate notice and hearing regulations were already in place when Congress enacted the 1987 Amendments.

*Id. See also* Ct.Rec. 35 at 22.

 The Plaintiff also argues that the Defendant, through the MFCU, was under an obligation to inform him during the Utah state court proceeding of the distinction between deferred prosecutions and deferred adjudications. The Plaintiff asserts that if the Defendant published its intended application of the contested statutory provision, he would have documented the record below so that the disposition of his case would not have been characterized as a deferred adjudication. The Plaintiff argues that the Defendant had some unpublished written policy defining deferred adjudication under § 1320a–7(i)(4). In the alternative, the Plaintiff appears to argue that even if there were no formal written internal regulations or guidelines in existence, the Defendant should have published his intended application of the provision.

First, the Defendant denies the existence of any unpublished written policy defining deferred adjudication under § 1320a–7(i)(4). Besides his allegation, the Plaintiff has offered nothing to support his contention that there exist unpublished policies or guidelines defining deferred adjudication. Therefore, the Plaintiff has failed to carry his burden to survive summary judgment on this issue.

 The Plaintiff's assertion that the Defendant was under an affirmative duty to publish his views on the intended application of § 1320a–7(i)(4) is also without merit. It is settled that detailed rules and/or regulations are not required for every statutory provision, nor is it required that every word of every statute be defined. As the Supreme Court has stated:

Not every principle essential to the effective administration of a statute can or should be cast immediately into the mold of a general rule. Some principles must await their own development, while others must be adjusted to meet particular,

unforeseeable situations. In performing its important functions in these respects, therefore, an administrative agency must be equipped to act either by general rule or by individual order. To insist on one form of action to the exclusion of the other is to exalt form over necessity.

*SEC v. Chenery Corp.*, 332 U.S. 194, 202, 67 S.Ct. 1575, 1580, 91 L.Ed. 1995 (1947); *See also American Power & Light Co. v. SEC*, 329 U.S. 90, 67 S.Ct. 133, 91 L.Ed. 103 (1946); *Pulido v. Heckler*, 758 F.2d 503, 506 (10th Cir.1985). However, regulations are required in cases where the statute itself mandates the promulgation of regulations. *See Pulido*, 758 F.2d at 506.

During oral argument, the Plaintiff asserted that § 1320a–7(c) required the Defendant to publish regulations relating to his intended application of § 1320a–7(a)(1) and § 1320a–7(i)(4). Section 1320a–7(c) provides, in pertinent part:

An exclusion under this section ... shall be effective at such time and upon such reasonable notice to the public and to the individual or entity excluded as *may* be specified in regulations consistent with paragraph (2).

(Emphasis added). The court finds that § 1320a–7(c) does not require publication of regulations detailing the criteria for exclusion, it only requires notice of the exclusion itself. Further, even if § 1320a–7(c) stood for what the Plaintiff suggests, the language regarding the promulgation of regulations in this section is permissive, not mandatory. Therefore, the Secretary did not violate the APA by failing to promulgate regulations under § 1320a–7(c).

The Plaintiff has pointed to no legitimate statutory provision directing the Defendant to promulgate regulations defining deferred adjudication or distinguishing it from deferred prosecution. The statute itself in § 1320a–7(i)(4) provided the Plaintiff with notice that a "conviction" included participation in a deferred adjudication program. Moreover, even in the absence of explanatory regulations, the distinction between deferred prosecution and deferred adjudication is sufficiently clear. In a deferred prosecution, an agreement is en-

tered into between the prosecutor and the defendant. At the heart of deferred prosecution is an agreement by the prosecutor to delay bringing or prosecuting charges. In a deferred adjudication, there is no such deferral by the prosecutor.

What occurred in the case at bar cannot be characterized as a deferred prosecution because there was no deferral of prosecution. Instead, the charges were brought and a plea was tendered to the Utah court and the court, in effect, reserved ruling on the acceptance of the plea until the terms of the plea agreement had been fulfilled. This type of arrangement can most accurately be described as a deferred acceptance of a plea.

Based on the foregoing, the court concludes that the Defendant did not violate the APA or the Due Process Clause by failing to publish regulations defining "deferred adjudication" or explaining how it differed from a deferred prosecution. Consequently, the court must also reject the Plaintiff's argument that the alleged quota system induced the Defendant into establishing a system that provided insufficient notice concerning the prerequisites for exclusion.

### C. *Reliance on Unpublished Regulations*

The Plaintiff also alleges in his complaint that the Defendant's previously published regulations were only applicable to the pre–1987 statutory provisions. The Plaintiff claims that the Defendant modified these regulations without publication, and at the time of the Plaintiff's "conviction," these regulations remained unpublished.

The APA requires the Defendant to publish regulations relating to the implementation of § 1320a–7, as well as any amendments to the regulations pertaining to that section. 5 U.S.C. § 552(a)(1) provides, in pertinent part:

Each agency shall make available to the public information as follows: (1) Each agency shall separately state and currently publish in the Federal Register for the guidance of the public— ... (D) substantive rules of general applicability adopted as authorized by law, and state-

ments of general policy or interpretations of general applicability formulated and adopted by the agency; and (E) each amendment, revision, or repeal of the foregoing.

In his brief, the Defendant claims that no unpublished regulations were relied on in excluding the Plaintiff. It is his position that the Plaintiff was excluded under the mandatory provisions of § 1320a–7 because he had been convicted of a program-related offense as defined in § 1320a–7(i)(4).

Apparently, the "regulations" referred to by the Plaintiff are contained in the Administrative Record, beginning on page 129. These regulations, as the Plaintiff refers to them, are contained in a 14–page report entitled "Civil Monetary Penalty and Exclusion Authorities." This report contains 6 columns of information: (1) the type of conduct prohibited by the statute; (2) the maximum penalty, if applicable; (3) whether exclusion is allowed, and if so, whether it is mandatory; (4) the effective date of the sanction (pre- or post-hearing); (5) the standard of knowledge; and (6) the applicable statutory provision. There is nothing in this "regulation" which sets forth any implementation instructions or any other type of information which could not be gleaned from the face of the statute itself.

In his response to the Defendant's motion for summary judgment, the Plaintiff has not created a genuine issue of material fact concerning the existence of any unpublished regulations, let alone the fact that any unpublished regulations were relied upon by the Defendant in this case. In the Plaintiff's brief, the only discussion of this issue was a bald face allegation that the Defendant had unpublished regulations. This is insufficient to defeat a summary judgment motion. Therefore, the court concludes that the Plaintiff's assertion is without merit and should be dismissed.

### D. *Neutral Decision–Maker*

The Plaintiff asserts that his due process rights were violated in the administrative proceedings below because he was not provided a neutral and detached judge. His allegation again centers on the effect

the alleged quota system had on the decisions made by the officers who participated in the proceedings below.

The substance of this issue was previously addressed in this court's Order Granting Defendant's Motion For Summary Judgment (Ct.Rec. 35) where the court held that the decision-makers below did not exercise discretion or fact finding in this matter, for the Plaintiff was excluded under a mandatory statutory provision. Because the Plaintiff's exclusion was mandated under § 1320a–7(a)(1), and the administrative hearing officers had no choice but to exclude him, the Plaintiff was not denied a neutral decision-maker in this case. Irrespective of the administrative decision-makers' holdings, this court found that the Utah state court disposition of the charge levied against the Plaintiff amounted to a "conviction" of a "program-related offense." Consequently, the 5 year exclusion under § 1320a–7(a)(1) was mandated.

### E. Challenging Underlying Facts of the Conviction

■■■ The Plaintiff contends that the Due Process Clause was violated when he was denied the opportunity to collaterally attack the facts underlying his state court "conviction" and that this deprived him of the opportunity to defend himself without a legal basis for that deprivation. The Plaintiff asserts that the underlying facts and circumstances that gave rise to the tendering of his nolo contendere plea should not be presumed in this proceeding.

Section 1320a–7(a)(1) contains two requirements for mandatory exclusion. There must have been (1) a conviction (2) of a program-related offense. Whether there was a "conviction" necessitates only an examination of the original criminal *proceedings*. It does not necessitate, nor would it be proper, to reevaluate the underlying facts which gave rise to the conviction. In this case, the court need only examine the proceedings and judgment of the Utah court, which the court has already done, and found that, indeed, the Plaintiff was "convicted." *See* Ct.Rec. 35.

The second prong of § 1320a–7(a)(1) requires the court to determine whether or not the individual's conviction was for a program-related offense. In order to make this determination, the reviewing court need only examine the "type" of conviction and decide whether it qualifies as a program-related offense under the statute. It is not necessary or proper for the court to delve into the facts surrounding the conviction. To do so would require this court to unnecessarily review a state court criminal proceeding. The role of this court under a § 1320a–7(f) review is not to scrutinize the validity of the underlying conviction; rather, it is to review the validity of the exclusion. As this court held in its Order Granting Defendant's Motion for Summary Judgment (Ct.Rec. 35): "In this case, the nature of the Plaintiff's crime was characterized by the State of Utah. The Inspector General merely concluded that the conviction met the requirement of a program-related crime, a conclusion that involved no fact-finding nor any discretion." *Id.* at 22.

In sum, the court concludes that the hearing provided under § 1320a–7(f) does not necessitate an evidentiary hearing concerning the underlying conviction. Consequently, the Plaintiff's due process rights were not violated when he was denied the ability to relitigate the facts underlying his state court "conviction."

### F. Improper Deference to the Administrative Decision-Maker

■■■ The Plaintiff claims that the court applied an improper standard in its Order Granting Defendant's Summary Judgment Motion (Ct.Rec. 35). Specifically, the Plaintiff asserts that the court afforded improper deference to the administrative decision-makers. The court allegedly did this when it found that there was "substantial evidence" for the Defendant to conclude that the Plaintiff participated in a first-offender program, rather than a non-criminal diversion program. The Plaintiff claims that it was improper for the court to grant deference to decision-makers whose conclusions were tainted by a quota system violative of due process.

The court notes that the administrative decision-makers did not engage in any fact-

finding. Rather, they relied on the facts as set forth in the Utah state court record. Consequently, the court did not and, as a practical matter, could not have given deference to any factual determination made by the Defendant or his agency. The court acknowledges that had the Defendant's agency engaged in fact-finding, or had they exercised any discretion in this matter, the result of this case might well be different. However, the fact is that these decision-makers, the ones allegedly tainted by the quota system, engaged in no discretionary activity that might place in jeopardy the Plaintiff's due process rights. Therefore, even if an illegal quota system was in place, it did not harm the Plaintiff's due process rights because no discretion was exercised in this case, except by the Utah court.

Although this court did state that the Defendant's holding was supported by "substantial evidence," the court stresses that it did not give *any* deference to the administrative decision-makers. This is partly because of the possible monetary incentive these individuals had in excluding the Plaintiff, and, more importantly, because the court did not have to give these decision-makers any deference. Even if this court were to review this case *de novo*, it would not have any basis for overturning the Plaintiff's exclusion. Given the facts in the case at bar, the Plaintiff's sanction was *mandatory* and no decision-maker could have found otherwise.

The Plaintiff also suggests that the court had to grant deference to the administrative decision-makers when it concluded that § 1320a–7(a)(1) (the mandatory provision) applied instead of § 1320a–7(b)(1) (the permissive provision). Although the court has already held that the Plaintiff's conduct

*mandated* exclusion under § 1320a–7(a)(1),[1] it will address the issue again in order to clarify the distinctions between the mandatory and permissive exclusion sections.

Section 1320a–7(a)(1) addresses a narrow type of conviction. That is, one which is related to the delivery of an item or service under the Medicare or Medicaid programs. Section 1320a–7(b)(1), on the other hand, deals with financial crimes in the health care industry in general, thus it is broader in scope than section (a)(1). In other words, section (a)(1) has a requirement that section (b)(1) does not have: a conviction under section (a)(1) must relate to delivery of an item or service under *Medicare or Medicaid or any State health care program.* Section (b)(1) provides that the Secretary *may* exclude

[a]ny individual or entity that has been convicted under Federal or State law, in connection with the delivery of a health care item or service or with respect to any act or omission in a program operated by or financed in whole or in part by any Federal, State, or local government agency, of a criminal offense relating to fraud, theft, embezzlement, breach of fiduciary responsibility, or other financial misconduct.

Section (b)(1)'s legislative history illustrates Congress' intent that an individual *may* be excluded from the Medicare and Medicaid programs if he engages in financial misconduct in the private sector or in connection with governmental programs other than Medicare or Medicaid.

Under current law, the Secretary does not have the authority to exclude individuals or entities convicted of criminal offenses which are not related to Medicare or Medicaid or the other State health

---

**1.** *See* Ct.Rec. 35. Legislative history also supports the court's finding that the Plaintiff's conviction was for a program-related offense. In 1977, Congress enacted the Medicare–Medicaid Antifraud and Abuse Amendment, which was later amended into its current form in 1987. The Amendment required the Secretary to suspend from participation under the Medicare and Medicaid programs those individual practitioners who have been convicted of a criminal offense relating to such individual's involve-

ment in Medicare and Medicaid. H.Rpt. No. 95–393, 95th Cong., 1st Sess. 3, *reprinted in* 1977 U.S.Code Cong. & Admin.News 3039, 3042. When discussing the purpose of the Amendment, Congress noted that fraud and abuse can occur in a number of different medical settings. *Id.* at 3047. Congress went on to state that "program fraud and abuse covers a broad spectrum of practices, ranging from the rendering of services of arguable necessity to such criminal offenses as filing false claims." *Id.* at 3049–50.

care programs. This provision would permit the Secretary to exclude persons and entities who have already been convicted of offenses relating to their financial integrity, if the offenses occurred in delivering health care to patients *not covered by public programs or if they occurred during participation in any other governmental program.*

S.Rpt. No. 100–109, 100th Cong., 1st Sess. 5, *reprinted in* 1987 U.S.Code Cong. & Admin.News 682, 687. (Emphasis added.) Based on the wording of the statute and its legislative history, the court finds that section (b)(1) was enacted to address an issue that was not covered by the pre–1987 version of section (a)(1). Section (b)(1)'s legislative history illustrates Congress' desire to exclude individuals from Medicaid and Medicare if they engage in any type of financial misconduct connected with the delivery of medical services, even if it had nothing to do with Medicare or Medicaid.

The Plaintiff persists in arguing that the Defendant exercised discretion in deciding to exclude the Plaintiff under § 1320a–7(a)(1), rather than § 1320a–7(b)(1). To that end, the Plaintiff argues that this court afforded the administrative decision-makers improper deference when it agreed that section (a)(1) was the appropriate provision in the Plaintiff's case. The court disagrees.

An exclusion determination under § 1320a–7 is a two-step process. First, the Secretary must determine whether the mandatory provision applies. Under § 1320a–7(a) the Secretary *shall exclude* individuals who have been convicted of a program-related crime or who have been convicted of patient abuse. If the prerequisites of this section are met, the Secretary is directed by Congress to exclude that individual, and the issue of permissive exclusion becomes moot. It is only after the Secretary determines that the individual's conviction was not for a "program-related crime" that the permissive exclusion statute becomes relevant.

The decision-makers below did not "choose" to apply § 1320a–7(a)(1). Rather, because the Plaintiff's conviction was a program-related offense, they had no choice but to apply the mandatory exclusion provision. This court did not afford the administrative decision-makers any deference when it held that the mandatory exclusion provision was correctly applied in this case. Accordingly, the court concludes that the express language of the applicable statutory provisions indicate that the Secretary had no choice but to exclude the Plaintiff for the 5–year mandatory minimum under § 1320a–7(a)(1).

Because the Plaintiff has failed to establish any genuine issues of material fact and the Defendant is entitled to judgment as a matter of law, the Defendant's motion seeking judgment as a matter of law on the remaining issues in the Plaintiff's complaint should be granted.

IT IS HEREBY ORDERED that the Defendant's motion for summary judgment (Ct.Rec. 38) IS GRANTED. The Plaintiff's complaint, and the claims therein, shall be DISMISSED WITH PREJUDICE.

IT IS SO ORDERED.