Dan H. ANDERSON, Plaintiff,

v.

Tommy G. THOMPSON, Secretary, United States Department of Health and Human Services, Defendant.

No. 02–2312–JAR.

United States District Court, D. Kansas.

March 10, 2004.

James R. Wyrsch, Keith E. Drill, Wyrsch Hobbs & Mirakian, PC, Kansas City, MO, for Plaintiff.

John William O'Brian, Office of Counsel, Department of HHS, Washington, DC, Melanie D. Caro, Office of United States Attorney, Kansas City, KS, Edgar Dennis Bueno, Office of Counsel, Department of HHS, Washington, DC, for Defendant.

## *MEMORANDUM ORDER AND OPINION AFFIRMING DEFENDANT'S FINAL DECISION AND DENYING RELIEF SOUGHT IN PLAINTIFF'S COMPLAINT*

ROBINSON, District Judge.

This is an appeal brought by Plaintiff in a Complaint For Judicial Review (Doc. 1) of Defendant's final decision to exclude Plaintiff from participation in Medicare, Medicaid, and all Federal health care programs for fifteen years. The exclusion was imposed pursuant to 42 U.S.C. § 1320a7(a)(1) after Plaintiff, the former President and Chief Executive Officer of Baptist Medical Center, was convicted[1] of conspiracy and aiding and abetting in violating the Medicare Anti–Kickback Statute, 42 U.S.C. § 1320a–7b(b).[2] Because it is supported by substantial evidence in the administrative record and a correct application of the law, the Court affirms Defendant's final decision to exclude Plaintiff from participation in Medicare, Medicaid, and all Federal health care programs for fifteen years.

## I. Procedural Background

In a letter dated January 31, 2000, the Office of Inspector General for the United States Department of Health and Human Services (OIG), notified Plaintiff that he was being excluded from participation in Medicare, Medicaid, and all other Federal health care programs for a period of fifteen years pursuant to 42 U.S.C. § 1320a–7(a)(1). At Plaintiff's request, an Administrative Law Judge (ALJ) reviewed the OIG's determination, conducting an administrative hearing in December 2000. After hearing the testimony of various witnesses and considering other evidence, the ALJ issued a ruling affirming the OIG's determination. Specifically, the ALJ found that: (1) the OIG properly excluded Plaintiff under the mandatory exclusion provision of 42 U.S.C. § 1320a–7(a)(1); (2) the OIG established three aggravating factors which justified the period of exclusion in this case; (3) no mitigating factors applied to Plaintiff's exclusion; and (4) a fifteen-year exclusion of Plaintiff was not excessive and was within a reasonable range of possible exclusion periods. Plaintiff appealed the ALJ's decision. On April 29, 2002, the Departmental Appeals Board, Appellate Division declined review. Thus, the ruling of the ALJ became the Secretary's final decision.

## II. Standard of Review

Pursuant to 42 U.S.C. § 1320a–7(f), this action for judicial review of the Secretary's final decision arises under 42 U.S.C. § 405(g). As in any other case arising under 42 U.S.C. § 405(g), the court has jurisdiction to review the administrative record and applicable law; and to affirm the final decision of the Secretary if it is supported by substantial evidence in the record as a whole.[3] "Substantial evidence" is more than a scintilla and is that evidence which a reasonable mind might accept as adequate to support a conclusion.[4] If the

---

1. *United States v. Anderson,* Case No. 98–CR–20030–01–JWL

2. 42 U.S.C. § 1320a–7b(b)(2)(A) and (B).

3. 42 U.S.C. § 405(g); *Richardson v. Perales,* 402 U.S. 389, 401, 91 S.Ct. 1420, 28 L.Ed.2d 842 (1971).

4. *Richardson,* 402 U.S. at 401, 91 S.Ct. 1420; *Ray v. Bowen,* 865 F.2d 222, 224 (10th Cir.

Secretary's decision is supported by substantial evidence, it will be deemed conclusive and affirmed by the court.[5]

### III. Relevant Framework for Analyzing Exclusion and ALJ's findings

■ Section 1320a–7 of Title 42 of the United States Code authorizes the Secretary to exclude certain individuals and entities from participation in Federal health care programs, including the Medicare and Medicaid programs. The purpose of exclusion is to protect the Medicare, Medicaid, and all Federal health care programs from fraud and abuse, and to protect the beneficiaries of those programs from incompetent practitioners and from inappropriate or inadequate care.[6] The Secretary has delegated the responsibility for imposing exclusions to the OIG.[7] There are two types of exclusions: mandatory and permissive.[8] An exclusion imposed under the mandatory exclusion provisions of § 1320a–7(a)(1) must be for a minimum period of five years.[9] This minimum period of exclusion may be extended if the Secretary determines that any of nine aggravating factors is present.[10] There are also mitigating factors that the Secretary may consider, but only if the Secretary has first determined that one or more aggravating factors justifies an exclusion period longer than five years. The mitigating factors may be used to reduce such a longer exclusion period, but in no event may the Secretary impose an exclusion period of less than five years.[11]

### IV. Analysis of Plaintiff's Specific Arguments

*Mandatory versus Permissive Exclusion*

Plaintiff first contends the ALJ's imposition of a period of exclusion under the mandatory exclusion provision of 42 U.S.C. § 1320a–7(a)(1) was an erroneous application of law, and the ALJ should have applied the permissive exclusion provisions of 42 U.S.C. § 1320a–7(b)(7). Plaintiff argues the mandatory provision applies to a "broad, generalized category" of individuals who are convicted of a criminal offense related to the delivery of an item or service. The mandatory exclusion provision of 42 U.S.C. § 1320a–7(a) states in pertinent part:

> The Secretary shall exclude the following individuals and entities from participation in any Federal health care program (as defined in section 1320a–7b(f) of this title):
>
> (1) Conviction of program-related crimes
>
> Any individual or entity that has been convicted of a criminal offense related to the delivery of an item or service under subchapter XVIII of this chapter or under any State health care program.

Canons of statutory construction, Plaintiff argues, dictate that the more specific and applicable permissive exclusion provision be applied, because the permissive provision in 42 U.S.C. § 1320a–7(b)(7) expressly references the criminal offense for which Plaintiff was convicted, 42 U.S.C.

1989); *Westin v. Shalala*, 845 F.Supp. 1446, 1450 (D.Kan.1994).

**5.** *See* 42 U.S.C. § 405(g).

**6.** *See* S.Rep. No. 100–109, at 2 (1987), *reprinted in* 1987 U.S.C.C.A.N. 682; *see also Manocchio v. Kusserow*, 961 F.2d 1539, 1541–42 (11th Cir.1992)(noting that the legislative intent of the exclusionary period is to protect the public; thus the sanction is remedial).

**7.** Delegation of Authority Under Social Security Act, 48 Fed.Reg. 21,662 (May 13, 1983).

**8.** 42 U.S.C. 1320a–7.

**9.** 42 U.S.C. § 1320a–7(c)(3)(B); 42 C.F.R. § 1001.102(a).

**10.** 42 C.F.R. § 1001.102(b).

**11.** 42 C.F.R. § 1001.102(c).

§ 1320a–7b(7), the Anti–Kickback Statute. The permissive exclusion provision of 42 U.S.C. § 1320a–7(b) referenced by Plaintiff states:

(b) Permissive exclusion

The Secretary may exclude the following individuals and entities from participation in any Federal health care program (as defined in section 1320a–7b(f) of this title):

. . . . .

(7) Fraud, kickbacks, and other prohibited activities

Any individual or entity that the Secretary determines has committed an act which is described in section 1320a–7a, 1320a–7b, or 1320a–8 of this title.

Plaintiff was convicted of conspiracy to commit kickback violations, in violation of 18 U.S.C. § 371 and offering and paying bribes in violation of 42 U.S.C. § 1320a–7b(b), one of the statutes expressly referenced in the permissive exclusion provision of 42 U.S.C. § 1320a–7(b)(7).

■ Statutory construction, however, must begin with a reading of the plain language of the statute. In *Chevron,*[12] the Supreme Court held that federal agencies are obliged to search a statute first to see if Congress has spoken directly to the question at hand. "If the intent of Congress is clear, *that is the end of the matter;* for the court, as well as the agency, must give effect to the unambiguously expressed intent of Congress."[13] Only if Congressional intent is not clear or is ambiguous is the agency to engage in its own construction.[14] This Court finds that Congress's intent can be gleaned from the plain language of this statute, and that the ALJ did not err in applying the mandatory exclusion provision.

■ Pursuant to the plain language of 42 U.S.C. § 1320a–7(a)(1), the mandatory exclusion provision applies to individuals *convicted* of *program-related crimes,* that is crimes *related to the delivery of an item or service.* On the other hand, 42 U.S.C. § 1320a–7(b)(7) provides that the permissive exclusion provision Plaintiff references applies to individuals *that the Secretary determines has committed an act* described in certain statutes, including the Anti–Kickback Statute. Obviously, if a jury has convicted an individual of committing a program-related crime, the Secretary need not make a determination that the individual has engaged in the underlying conduct; a jury has found beyond a reasonable doubt that the person has committed the conduct. Mandatory exclusion thus applies to those convicted of program-related crimes, while permissive exclusion applies to those the Secretary has determined (in an administrative proceeding) have committed certain acts described in specific statutes.

If legislative intent was not apparent from the plain language of the statute, the ALJ could have resorted to legislative history. But the legislative history does not support the interpretation urged by Plaintiff. The legislative history explains that § 1320a–7(b)(7) is a very different exclusion authority than the exclusion authority of § 1320a–7(a)(1) for program-related convictions. Exclusion authority under § 1320a–7(b)(7) rests on a determination by the Secretary that the individual has committed an act described in §§ 1320a–7a, 1320a–7b, or 1320a–8. A permissive exclusion proceeding under § 1320a–7(b)(7) is initiated by Defendant's Office of Inspector General, and the respondent has

---

12. *Chevron, U.S.A., Inc. v. Natural Res. Def. Council, Inc.,* 467 U.S. 837, 104 S.Ct. 2778, 81 L.Ed.2d 694 (1984).

13. 467 U.S. at 842–43, 104 S.Ct. 2778 (emphasis added).

14. *Id.* at 843, 104 S.Ct. 2778.

the right to a pre-exclusion hearing in which the Office of Inspector General must introduce evidence to establish, by a preponderance of the evidence, that a violation of any of the enumerated sections has occurred. The legislative history of section 1320a–7(b)(7) indicates it was enacted as an alternative to criminal prosecution or where a program-related conviction does *not* exist.[15]

 Plaintiff further argues the ALJ failed to prove that his conviction, for conspiracy to commit kickback violations, and offering and paying illegal remunerations, in violation of 18 U.S.C. § 371, 42 U.S.C. § 1320a–7b(b) and 18 U.S.C. § 2, was a "program-related" conviction, "related to the delivery of an item or service." Plaintiff argues there was not substantial evidence supporting the ALJ's finding that Plaintiff had caused hospital employees to offer and pay bribes to two doctors in exchange for their referral of Medicare patients to the hospital. Plaintiff also con-

tends erroneous jury instructions allowed him to be convicted even if the jury found that he had authorized fair market value payments for bona fide services that he expected to be provided, if the payments were made in part to induce or pay for patient referrals. These arguments parrot those he made on direct appeal of his conviction: that insufficient evidence and erroneous jury instructions allowed him to be convicted for conduct that was not a crime. This is nothing more than a veiled collateral attack on his conviction, which is improper and beyond the scope of judicial review in this forum.[16]

Despite Plaintiff's protestations that his "case was truly unusual" and that his conduct, as a CEO of a hospital, must be distinguished "from the other categories of health care providers," Congress intended to criminalize this type of abuse and intended to prevent further abuse by excluding those convicted of conduct.[17] The Court is not persuaded that this practice of

---

**15.** See S.Rep. No. 100–109 at 5 (1987), *reprinted in* 1987 U.S.C.C.A.N. 682; *see also Greene v. Sullivan*, 731 F.Supp. 835, 838 (E.D.Tenn.1990) ("the dichotomy [between mandatory and permissive] was intended to be ... between program related crimes and other relevant crimes which did not defraud the program itself (such as fraud on insurance companies.")); *Travers v. Sullivan*, 801 F.Supp. 394, 404 (E.D.Wash.1992) (An exclusion determination under section 1320a–7 is a two-step process; once the Secretary determines that the individual was convicted of a program-related crime or patient abuse, the issue of permissive exclusion becomes moot. Only after the Secretary determines that the conviction was not for a program-related crime or that the prerequisites of the mandatory provision are not met, does the Secretary consider exclusion under the permissive provisions).

**16.** *See Travers v. Sullivan*, 801 F.Supp. 394, 403 (E.D.Wash.1992) (where the Secretary excluded an individual on the basis of conviction for a program-related offense, it was "not necessary or proper for the court to delve into the facts surrounding the conviction"); *Bo-*

*nebrake v. United States*, No. 94–6296, 1995 WL 321930 at *2 (10th Cir.1995) (unpublished opinion) (a court reviewing the Secretary's final decision to exclude a provider does not reweigh the evidence nor resolve conflicts in the evidence) (citations omitted).

**17.** See 42 C.F.R. § 1001.101(a) (program-related offenses for purposes of mandatory exclusion under section 1320a–7(a)(1) include "the performance of management or administrative services relating to the delivery of health care items or services"); *see also Travers v. Sullivan*, 791 F.Supp. 1471, 1481 (E.D.Wash.1992) *aff'd* 20 F.3d 993 (9th Cir. 1994) (Since the 1987 amendment to 42 U.S.C. § 1320a–7(a)(1), for mandatory exclusion, an individual need only be convicted of a criminal offense related to a delivery of an item or service, the convicted individual need not have participated in the delivery, and the item or service is not limited to medical care or services); Omnibus Budget and Reconciliation Act of 1980, Pub.L. No 96–499, *reprinted in* 1980 U.S.C.C.A.N. 5526, 5572.

paying remuneration in exchange for doctors' referral of patients, was not abusive, even if Plaintiff demonstrated patients were provided with quality care at competitive or reasonable prices. The conduct underlying this conviction is abusive because it impedes market competition among hospitals and health care providers. More critically, Plaintiff and his co-conspirators were not primarily focused on providing quality patient care; rather, their focus was on maximizing the number of patients referred to the hospital. The monies paid by the Medicare program for these "costs" could have otherwise been spent on the actual costs of providing care and treatment to Medicare patients. In sentencing Plaintiff, Judge Lungstrum rejected Plaintiff's self-serving argument, noting:

> A jury could infer from Mr. Anderson's repeated "torpedoes be damned" attitude toward paying the annual fees, which he personally directed to be paid, that he placed little value on the La-

Hues' consulting and instead cared only about the patient referrals.

### Extended Exclusion Based on Aggravating Factors

Plaintiff contends there was not substantial evidence supporting Defendant's imposition of a longer exclusion period based on aggravating factors. Defendant may impose an exclusion of more than five years upon finding any one of nine aggravating factors.[18] Here, Defendant found three aggravating factors: that the court imposed a sentence that included incarceration; that the acts resulting in Plaintiff's conviction occurred over a period of a year or more; and that the acts resulting in Plaintiff's conviction resulted in more than a $1500 financial loss to the Medicare program. This Court finds there was substantial evidence supporting each of these aggravating factors. First, it is undisputed that Plaintiff was sentenced to a term of 51 months in prison.

---

**18.** 42 C.F.R. § 1001.102(b) states:

Any of the following factors may be considered to be aggravating and a basis for lengthening the period of exclusion—

(1) The acts resulting in the conviction, or similar acts, that caused, or were intended to cause, a financial loss to a Government program or to one or more entities of $5,000 or more. (The entire amount of financial loss to such programs or entities, including any amounts resulting from similar acts not adjudicated, will be considered regardless of whether full or partial restitution has been made);

(2) The acts that resulted in the conviction, or similar acts, were committed over a period of one year or more;

(3) The acts that resulted in the conviction, or similar acts, had a significant adverse physical, mental or financial impact on one or more program beneficiaries or other individuals;

(4) In convictions involving patient abuse or neglect, the action that resulted in the conviction was premeditated, was part of a

continuing pattern of behavior, or consisted of non-consensual sexual acts;

(5) The sentence imposed by the court included incarceration;

(6) The convicted individual or entity has a prior criminal, civil or administrative sanction record;

(7) The individual or entity has at any time been overpaid a total of $1,500 or more by Medicare, Medicaid or any other Federal health care programs as a result of intentional improper billings;

(8) The individual or entity has previously been convicted of a criminal offense involving the same or similar circumstances; or

(9) Whether the individual or entity was convicted of other offenses besides those which formed the basis for the exclusion, or has been the subject of any other adverse action by any Federal, State or local government agency or board, if the adverse action is based on the same set of circumstances that serves as the basis for imposition of the exclusion.

Secondly, Plaintiff was convicted of conspiring to violate the Anti–Kickback Statute, and of violating the statute; the acts of Plaintiff and his co-conspirators occurred over a ten year period, from 1984 to 1995. Plaintiff's criminal conduct included paying and instructing other hospital employees to pay bribes to Doctors Robert and Ronald LaHue in exchange for referral of their Medicare patients to the hospital. At Plaintiff's direction, the hospital paid each doctor $75,000 per year in so-called "consulting fees," for a total of $150,000 a year. As part of the scheme, Plaintiff directed that the fees paid to the doctors be listed and certified as costs reimbursable by the Medicare program. The consulting agreements that both induced and remunerated the doctors' referral of patients to the hospital were operative for more than ten years. In sentencing Plaintiff, Judge Lungstrum specifically found that Plaintiff's criminal conduct "... went on for a long period of time," and that Plaintiff had "a leadership and organizer role" in the conspiracy and scheme.

Notwithstanding Plaintiff's arguments that he relied on advice of counsel and that the consulting fees were paid in exchange for valuable services, it remains undisputed that Plaintiff's conduct, which a jury determined criminal, occurred over more than ten years. The Court will not engage in a re-litigation of the conduct underlying the conviction; and the ALJ was not required to conduct an evidentiary hearing to re-litigate the underlying conviction.[19]

Finally, Plaintiff argues there was not substantial evidence supporting the ALJ's finding that the loss exceeded $1500. Plaintiff first notes the sentencing judge did not order restitution because there was no loss. But, the record clearly shows the sentencing judge found a loss of $65,716, but ordered no restitution because the government had already received restitution through the imposition of a $17.5 million civil penalty against the hospital.[20]

Plaintiff further argues there was not substantial evidence supporting the amount of the loss. Although the ALJ was not bound by the district court's determination of loss in the criminal proceeding, the ALJ noted that Judge Lungstrum had found the loss to be $65,716 over the ten year period. Plaintiff's argument that this $65,716 was comprised solely of legitimate and reimbursable costs is not persuasive. Plaintiff's acts resulted in a loss to Medicare because the hospital included the bribes or "consulting fees" paid to the doctors in its annual cost reports that were submitted for Medicare reimbursement. This resulted in Medicare paying a percentage of these improperly claimed bribes.

The loss for purposes of sentencing was determined after an audit of the hospital's cost reports and other documents. The auditor re-computed the amount of Medi-

---

19. *Travers v. Sullivan*, 801 F.Supp. 394, 403 ( E.D.Wash.1992) (In a hearing concerning mandatory exclusion, physician had no right to relitigate facts underlying his conviction; court need only examine proceedings and judgment to determine that physician was convicted, and was convicted for a program-related offense).

20. In *United States v. Anderson*, 85 F.Supp.2d 1084, 1102–03 (D.Kan.1999), the Court stated:

"Thus, in connection with Baptist and Bethany, the court will offset the amount of the government's loss by the amount that the government received in civil settlements from these two hospitals. The government has received a settlement payment from Baptist in the amount of $17.5 million .... The government's loss[ ] related to ... [Baptist was] ... $65,716 .... Accordingly, no restitution is appropriate because, after the offset, the government suffered no loss."

care's liability for the hospital's reimbursable costs, after the bribes or "consulting fees" were subtracted from the hospital's annual costs reports submitted to Medicare. In re-computing the hospital's reimbursable costs, not all fees or remuneration paid to the doctors were disallowed. Legitimate fees, costs or remuneration paid to the doctors and/or their medical practice continued to be treated as reimbursable. For example, for one three-month period from October 1 to December 31, 1991, the hospital paid a total of $37,500 to the doctors; and the hospital included this $37,500 in the cost report it submitted to Medicare for reimbursement. This $37,500 was comprised of $27,431 in so-called consulting fees, plus $10,069 for other types of costs. The auditor subtracted the $27,341 from the reimbursable items on that cost report; thus the cost report was adjusted to show $10,069 in reimbursable costs. The auditor then determined the Medicare loss for that three month period was $2,703, which is the amount Medicare reimbursed the hospital for the $27,341 in so-called consulting fees.

Therefore, the re-computation of Medicare liability did not change the treatment of remuneration to the doctors that was properly claimed as reimbursable costs. Although Plaintiff argues that Defendant's expert witness Frisbie was not qualified to distinguish reimbursable and non-reimbursable costs, ultimately this was a mixed question of law and fact that was within the province of the ALJ.

Furthermore, the ALJ soundly rejected Plaintiff's attempt to counter the $65,716 loss to Medicare with evidence that the consulting agreements with the doctors resulted in program savings and improved patient care. As the ALJ concluded, 42 C.F.R. § 1001.102 does not require Defendant to make an independent assessment of any potential benefit to the government when determining the program-related loss to Medicare. In any event, although Plaintiff had witnesses who testified to program savings and improved care, there were other witnesses at trial who testified that the doctors performed only minimal, if any, of the services described in the consulting agreements. And, to the extent the hospital received reimbursement for legitimate costs and remuneration paid to Plaintiffs, the Medicare liability was not adjusted. The hospital paid and Medicare reimbursed the value of legitimate costs from Plaintiff's services.

### Reasonableness of Fifteen–Year Period of Exclusion

█ Finally, Plaintiff challenges the reasonableness of the term of exclusion. Exclusions imposed under § 1320a–7(a) must be for a minimum period of five years.[21] Defendant may impose an exclusion longer than five years if any one of certain aggravating factors is present. Here, Defendant found the existence of three aggravating factors: incarceration, conduct over a period exceeding one year, and a loss exceeding $1500. This Court has concluded there is substantial evidence supporting these three aggravating factors.

As he did in challenging the ALJ's finding of aggravating factors, Plaintiff argues program savings and improved and quality patient care resulted from the consulting agreements between the hospital and doctors. He contends the value of services and benefits received by the patients far exceeded the costs paid by the Medicare program, all warranting a shorter, not longer period of exclusion. If the presence of one or more aggravating factors justifies an exclusion longer than five years, then any of three specified mitigating factors may be considered as bases for reduc-

---

21. 42 U.S.C. § 1320a–7(c)(3)(B); *see also* 42 C.F.R. § 1001.102(a).

ing the period of exclusion to no less than the minimum statutory period of five years.[22] None of these three mitigating factors is present here.

If any one aggravating factor justifies an exclusion of longer than five years, then the presence of three aggravating factors surely justifies a longer exclusion. Here, one aggravating factor is that Plaintiff's sentence included a period of incarceration. Plaintiff correctly notes that the length of his sentence is determined by application of the United States Sentencing Guidelines, and cannot be interpreted as the sentencing court's view of his character or untrustworthiness. But, he received a sentence including incarceration, which is an aggravating factor. The other two aggravating factors here further justify the fifteen-year exclusion imposed. A longer exclusion period may be imposed when the individual's conduct lasts for a year or longer. The acts underlying Plaintiff's conviction lasted for more than ten years. A longer exclusion period may be imposed when the program-related loss exceeds $1500. The program-related loss here exceeded $65,000. The length of this conspiracy and the amount of program-related loss justify an exclusion period of fifteen years, three times the minimum exclusion period under the mandatory provisions. Indeed, the conspiracy lasted ten times longer than the minimum necessary to find an aggravating factor and the program-related loss was more than forty times the amount of loss necessary to find an aggravating factor.

As the ALJ aptly expressed, Plaintiff is an untrustworthy individual, as evidenced by his being a primary participant in a bribery scheme that lasted over ten years resulting in a loss to the Medicare program of $65,716. Plaintiff's illegal actions were recurrent and deliberate, not random and impulsive. And, rejecting Plaintiff's assertions that the acts of he and his-coconspirators were beneficial to patients, Judge Lungstrum stated:

> Mr. Anderson knew the payments he directed were more than fair market value for consulting services, that the services specified ultimately proved to be not entirely bona fide, and that the services specified were not sufficiently being performed ... he [Plaintiff] placed very little value in the LaHues' consulting and instead *cared only about patient referrals.*

Even if patients received quality care, that does not negate that Plaintiff and his co-conspirators abused the Medicare program by seeking government reimbursement of referral fees that served to do nothing more than pay for patient referrals. And

---

**22.** 42 C.F.R. § 1001.102(c) states in pertinent part:

Only the following factors may be considered mitigating—
(1) The individual or entity was convicted of 3 or fewer misdemeanor offenses, and the entire amount of financial loss (both actual loss and intended loss) to Medicare or any other Federal, State or local governmental health care program due to the acts that resulted in the conviction, and similar acts, is less than $1,500;
(2) The record in the criminal proceedings, including sentencing documents, demonstrates that the court determined that the individual had a mental, emotional or phys-

ical condition before or during the commission of the offense that reduced the individual's culpability; or
(3) The individual's or entity's cooperation with Federal or State officials resulted in—
(i) Others being convicted or excluded from Medicare, Medicaid and all other Federal health care programs,
(ii) Additional cases being investigated or reports being issued by the appropriate law enforcement agency identifying program vulnerabilities or weaknesses, or
(iii) The imposition against anyone of a civil money penalty or assessment under part 1003 of this chapter.

even if *those* patients received quality care, what about the dollars diverted from the Medicare program that could have been spent to reimburse costs for other patients who are Medicare beneficiaries? Fifteen years is a reasonable period of exclusion, based on the nature, length and effect of Plaintiff's acts.

## V. Conclusion

Substantial evidence in the record establishes that Defendant properly excluded Plaintiff under 42 U.S.C. § 1320a–7(a)(1) and that a fifteen-year exclusion was reasonable. Accordingly, Defendant's final decision to exclude Plaintiff for fifteen years is affirmed.

**IT IS THEREFORE ORDERED BY THE COURT THAT** Plaintiff's Complaint for Judicial Review (Doc. 1) DENIED.

**IT IS FURTHER ORDERED THAT** Defendant's final decision pursuant to 42 U.S.C. § 1320a–7(a)(1) excluding Plaintiff from Medicare, Medicaid, and all Federal health care programs for fifteen years is **AFFIRMED.**

**IT IS SO ORDERED.**