**FIRST MEDICAL HEALTH PLAN, INC., Plaintiff**

v.

**Nancy VEGA, in her official capacity as Executive Director of the "Administración de Seguros de Salud de Puerto Rico", Defendant.**

No. CIV 05–2254JAG.

United States District Court,
D. Puerto Rico.

Dec. 20, 2005.

Alberto G. Estrella, Kenneth C. Suria–Rivera, William Estrella Law Offices, San Juan, PR, Miglisa L. Capo, Carolina, PR, Gregory J. Casas (PHV), Baker & Hostetler LLP, Houston, TX, Richard W. Siehl (PHV), Baker & Hosteler LLP, Columbus, OH, for Plaintiffs.

Lizzie M. Portela–Fernandez, Lizzie Portela Law Office, San Juan, PR, for Defendants.

## OPINION AND ORDER

GARCIA–GREGORY, District Judge.

On December 5th, 2005, First Medical Health Plan, Inc. ("First Medical") filed a "Verified Complaint" and a "Motion for Temporary Restraining Order" against defendant Nancy Vega, in her official capacity as Executive Director of the "Administración de Seguros de Salud de Puerto Rico" ("ASES"). (Docket No. 1). Through the foregoing, First Medical seeks preliminary and permanent injunctive relief to enjoin ASES from disqualifying First Medical as a participant in its Medicare Advantage programs, by application of a Puerto Rico statute that is allegedly preempted by federal law.

ASES was served with process on December 6th, 2005. On that same date, the Court denied First Medical's request for a TRO and ordered the parties to file by Monday, December 12th, 2005, at 5:00 p.m., memoranda addressing the request for preliminary injunction. (Docket No. 7).

Based on the memoranda and documentary evidence submitted by the parties, the Court finds that there are no material facts in dispute and that it is appropriate to resolve the Motion for Preliminary Injunction without an evidentiary hearing.[1] For the reasons set forth below, the Court **DENIES** ASES's Motion to Dismiss, (Docket No. 16), and **GRANTS** First Medical's Motion for Preliminary Injunction.[2] (Docket No. 15).

## FACTUAL BACKGROUND

The Court extracts the relevant facts from ASES's "Motion to Dismiss Verified Complaint and in Opposition to First Medical's Application for Preliminary Injunction," (Docket No. 16), and examines the record in the light most favorable to ASES.

On October 5th, 2005, ASES published a Notice requesting proposals from Medicare Advantage organizations, with plans approved by the Center for Medicare and

---

1. The Court notes that First Medical moved for an evidentiary hearing. (Docket No. 12). ASES did not, nor did it request oral argument in its "Motion to Dismiss Verified Complaint and in Opposition to First Medical's Application for Preliminary Injunction." (Docket No. 16).

2. The Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1331. *See Verizon Maryland Inc., v. Public Service Commission,* 535 U.S. 635, 642, 122 S.Ct. 1753, 152 L.Ed.2d 871 (2002) (there is "no doubt that federal courts have jurisdiction under § 1331" over an action seeking injunctive and declaratory relief against state officials on the grounds that a state regulation was preempted by federal law); *Local Union No. 12004 v. Commonwealth of Massachusetts,* 377 F.3d 64, 75 (1st Cir.2004)("in suits against state officials for declaratory and injunctive relief, a plaintiff may invoke the jurisdiction of the federal courts by asserting a claim of preemption, even absent an explicit statutory cause of action").

Medicaid Services ("CMS"), interested in providing beneficiaries of the Government Health Insurance Plan (better known as "la Reforma") access to Medicare Advantage coverage, otherwise unavailable to such population due to the costs involved to the beneficiaries. The Notice explained that the proposals were being requested for a project called "Medicare Platino."

The Medicare Platino project is a state plan approved by CMS pursuant to Section 1935 of the Social Security Act, 42 U.S.C. § 1396u–5, and 42 C.F.R. § 423.907. Pursuant to these statutes, low-income Part D eligible beneficiaries who reside in the territories are not eligible to receive premium and cost-sharing subsidies of covered Part D drugs. Nonetheless, a territory may submit a plan under which medical assistance is to be provided to those low-income individuals, and if approved, the state plan will receive federal grants.[3]

Medicare Platino was conceived pursuant to the latter option. Its purpose is to extend to Medicare–Medicaid beneficiaries (disabled or over 65, and indigent), that are also eligible to receive complementary benefits under the Reforma, coverage similar to that offered by the Reforma to the rest of its population. For example, the Medicare Prescription Drug Plan, offered under Part D of Title XVIII of the Social Security Act, 42 U.S.C. § 1395 *et seq.*, is out of reach for the Medicare Platino target population, because of the costs involved to the beneficiaries. Through the Medicare Platino project, this target population would have the option to enroll in a Medical Advantage Prescription Drug Plan (MA–PD) subsidized by the Government of Puerto Rico. In order to fund Medicare Platino under the Program, ASES applied for and received an Enhanced Allotment from CMS, pursuant to Section 101(a)(2) of Part D of Title XVIII of the Social Security Act, 42 U.S.C. § 1395w–112(g), and 42 C.F.R. 423.907(a)(2). (Docket No. 22, Exh. A).

First Medical submitted a timely response to the request for proposals. However, on November 10th, 2005, ASES notified First Medical that Section 7033(c) of Puerto Rico Law No. 72 of September 7th, 1993, 24 L.P.R.A. § 7033(c) (Law No. 72) prevents ASES from allowing First Medical to provide Part D coverage under Medicare Platino. Section 7033(c) provides that

> [t]he Administration can only contract with insurers that do not have, directly or indirectly, an economic interest in, or other economic relationship with owners, subsidiaries, or affiliates of a health facility that provides services to the beneficiaries of the health insurance created by this chapter.

ASES applied Law No. 72 because First Medical is an affiliate, and shares some common shareholders, with several healthcare facilities. ASES provided no other basis for denying First Medical's proposal. First Medical timely and properly requested reconsideration, which ASES denied on November 17th, 2005.

---

**3.** 42 C.F.R. § 423.907 Treatment of territories.
 (a) General rules.
 (1) Low-income Part D eligible individuals who reside in the territories are not eligible to receive premium and cost sharing subsidies under sub-part P of this part.
 (2) A territory may submit a plan to the Secretary under which medical assistance is to be provided to low-income individuals for the provision of covered Part D drugs.
 (3) Territories with plans approved by the Secretary will receive increased grants under section 1935(e)(3) of the Act as described in paragraph (c) of this section.

First Medical filed this action seeking an injunction to prevent ASES from applying Section 7033(c) of Law No. 72 to disqualify it from providing Medicare Part D coverage under Medicare Platino. Specifically, First Medical argues that Law No. 72 is expressly preempted by federal law, inasmuch as Section 232 of the Medicare Prescription Drug Improvement and Modernization Act of 2003, 42 U.S.C. § 1395w26(b)(3), states that "[t]he standards established under this part shall supersede any State law or regulation (other than State licencing laws or State laws relating to plan solvency) with respect to MA[4] plans which are offered by MA organizations under this part."

On December 13th, 2005, the Court issued an Order requesting the parties supplemental memoranda on the following issues: 1) Whether the use of federal funds (approximately 18.6% of the total program cost) place Medicare Platino within the purview of the preemptive federal Social Security Medicare and/or Medicaid statutes invoked by First Medical; and 2) whether the umbilical cord between the Medicare Platino Project and the Medicare/Medicaid programs place Medicare Platino within the purview of the federal statutes invoked by First Medical. (Docket No. 20).

The parties filed supplemental memoranda on December 16th, 2005.

### STANDARD OF REVIEW

1. *Standard for Preliminary Injunction*

 The First Circuit evaluates four factors in determining whether to issue a preliminary injunction, to wit: 1) the movant's probability of success on the merits;

2) the likelihood of irreparable harm absent preliminary injunctive relief; 3) a comparison between the harm to the movant if no injunction issues and the harm to the objectors if one does issue; and 4) how the granting or denial of an injunction will interact with the public interest. *New Comm Wireless Services v. SprintCom, Inc.,* 287 F.3d 1 (1st Cir.2002); *Ross–Simons of Warwick, Inc. v. Baccarat, Inc.,* 102 F.3d 12, 15 (1st Cir.1996). The *sine qua non* of this four prong inquiry is the likelihood of success on the merits; if the moving party cannot demonstrate that he is likely to succeed in his quest, the remaining factors become matters of idle curiosity. *New Comm Wireless,* 287 F.3d at 9; *Freightliner L.L.C., v. Puerto Rico Truck Sales,* 399 F.Supp.2d 57 (D.P.R. 2005). That is, "when the likelihood of success on the merits is great, a movant can show somewhat less in the way of irreparable harm and still garner preliminary injunctive relief." *EEOC v. Astra USA, Inc.,* 94 F.3d 738, 743 (1st Cir.1996).

### DISCUSSION

1. *Likelihood of success on the merits*

First Medical argues that it has a right under the Supremacy Clause to seek prospective injunctive relief against enforcement of a state statute that is expressly preempted by federal law. Specifically, First Medical claims that Medicare Platino provides access to benefits that are created, defined and regulated by the Medicare Prescription Drug Improvement and Modernization Act of 2003; thus, pursuant to 42 U.S.C. § 1395w26(b)(3), cited above, Law No. 72 is displaced by 42 U.S.C. § 1395w27(d)(4), which addresses potential conflict of interests and fraud,[5] by requiring that

---

4. Acronym for "Medicare Advantage."

5. ASES claims that Law No. 72 seeks to "prevent unfair competition, self-referrals, fraud

[e]ach Medicare + Choice [now Medicare Advantage] organization shall, in accordance with regulations of the Secretary [of Health and Human Services], report to the Secretary financial information which shall include the following:

. . . . .

(ii) A copy of the report, if any, filed with the Secretary containing the information required to be reported under section 1320a–3 of this title by disclosing entities.

(iii) A description of transactions, as specified by the Secretary, between the organization and a party in interest. Such transactions shall include—

(I) any sale or exchange, or leasing of any property between the organization an a party in interest;

(II) any furnishing for consideration of goods, services (including management services), or facilities between the organization and a party in interest, but not including salaries paid to employees for services provided in the normal course of their employment and health services provided to members by hospitals and other providers and by staff, medical group (or groups), individual practice association (or associations), or any combination thereof; and

(III) any lending of money or other extension of credit between an organization and a party in interest.

In sum, First Medical argues that ASES cannot apply Section 7033(c) of Law No. 72 inasmuch as it is in direct conflict with the federal statute, which only requires disclosure of any transaction between an organization contracting with Medicare and a party in interest, as opposed to automatic disqualification. The Court agrees.

■ The United States Supreme Court has established that preemption is fundamentally a question of Congressional intent and, therefore, Congress has the ability to define the extent to which its enactments preempt state law. *Schneidewind v. ANR Pipeline Co.*, 485 U.S. 293, 299, 108 S.Ct. 1145, 99 L.Ed.2d 316 (1988); *Shaw v. Delta Air Lines, Inc.*, 463 U.S. 85, 95–98, 103 S.Ct. 2890, 77 L.Ed.2d 490 (1983). Express preemption occurs where a federal statute explicitly confirms Congress' intention to preempt a state law and defines the extent of the preclusion. *Grant's Dairy–Maine v. Commissioner of Maine*, 232 F.3d 8, 15 (1st Cir.2000). Accordingly, "when Congress has made its intent known through explicit statutory language, the courts' task is an easy one." *English v. General Electric Co.*, 496 U.S. 72, 79, 110 S.Ct. 2270, 110 L.Ed.2d 65 (1990).

■ In the case at bar, Congress made clear its intent to expressly preempt the application of any state law to Medicare Advantage programs, other than laws related to licencing or plan solvency. It is uncontested that First Medical currently satisfies all applicable Puerto Rico laws regarding licencing and plan solvency, and that it has been federally qualified to participate in Medicare Advantage plans. Moreover, ASES concedes that Medicare Platino is a plan conceived pursuant to 42 U.S.C. § 1396u and 42 C.F.R. § 423.907 (hence a Medicare Advantage plan), and that it receives at least 18.6% of its funding from federal grants. (Docket No. 16 at 3). Therefore, 42 U.S.C. § 1395w–27(d)(4) is applicable to Medicare Platino,

and abuse of the system that could very well occur if insurers have economic interests in

health facilities." (Docket No. 16 at 5).

and Law No. 72, which does not address licencing or solvency, is preempted by virtue of 42 U.S.C. § 1395w–26(b)(3).

ASES, nonetheless, advances two theories against this conclusion. First, it alleges that notwithstanding the umbilical cord between Medicare Platino and the Medicare Prescription Drug Improvement and Modernization Act of 2003, federal law is not applicable because the project is more than 80% state funded. (Docket No. 16 at 3). This argument, however, is unavailing in light of unequivocal First Circuit precedent to the effect that once a state elects to receive federal funding for a particular Medicare/Medicaid program, it must then administer it in compliance with federal law. *See e.g. Rio Grande Community Health Center, Inc. v. Rullan,* 397 F.3d 56, 61 (1st Cir.2005) (a state "need not participate in Medicaid, but once a state decides to participate, it must comply with all federal requirements"). The same reasoning applies here: the Commonwealth of Puerto Rico elected, pursuant to 42 C.F.R. § 423.907, to implement an optional Medicare Advantage plan; therefore, it must comply with the federal laws that enable and partially fund it.

ASES alternatively argues that the federal grant used for Medicare Platino is made available through the provisions of Title XIX of the Medicaid program, and thus the eligibility of service providers must be assessed pursuant to Sections 1124 and 1128(b)(8) of Title XI of the Social Security Act, 42 U.S.C. §§ 1320a–3 and 1320a–7(b)(8). (Docket No. 23 at 4–5). This argument is also ineffectual because, on the one hand, § 1320a–3 (like § 1395w27(d)(4)) does not require disqualification, but only that a service provider disclose to the Secretary of Health and Human Services ("the Secretary"), or the appropriate State agency, any ownership or control interest of at least five percent (5%) with any party in interest.[6] Moreover, § 1395(d)(4) already requires service providers to file with the Secretary a copy of the report required by § 1320a–3. Hence, § 1395w27(d)(4) is not in conflict with § 1320a–3; rather, it specifically incorporates it in its framework.

On the other hand, § 1320a–7(b)(8) codifies a "permissive exclusion" (as opposed to a "mandatory exclusion" under § 1320a–7(a)), which provides that *the Secretary* (not ASES) *may* exclude any entity or an individual from participating in any federal health care program if said entity or individual meets any of the conditions enumerated therein.[7] This section essen-

---

**6.** 42 U.S.C. § 1320a–3 provides in pertinent part that

(a)(1) The Secretary shall by regulation or by contract provision provide that each disclosing entity (as defined in paragraph (2)) shall—

(A) as a condition of the disclosing entity's participation in, or certification or recertification under, any of the programs established by subchapters V, XVIII, and XIX of this chapter, or

(B) as a condition for the approval or renewal of a contract or agreement between the disclosing entity and the Secretary or the appropriate State agency under any of the programs established under subchapters V, XVIII, and XIX of this chapter,

supply the Secretary or the appropriate State agency with full and complete information as to the identity of each person with an ownership or control interest (as defined in paragraph (3)) in the entity or in any subcontractor (as defined by the Secretary in regulations) in which the entity directly or indirectly has a 5 per centum or more of ownership interest. . . .

**7.** § 1320a–7 states in pertinent part that:

. . . . .

(b) Permissive exclusion

The Secretary shall exclude the following individuals and entities from participation in any Federal health care program . . . :

. . . . .

(8) Entities controlled by a sanctioned individual

tially gives the Secretary a discretionary authority to disqualify a service provider who has been excluded from participating in a State health care program due to reasons bearing on professional competence, performance or financial integrity. The Court finds, nonetheless, that Congress vested the *discretionary* authority to disqualify upon the Secretary, not on ASES or any other State agency.

In sum, none of the cited statutes grant ASES authority to disqualify First Medical from servicing beneficiaries of Medicare Platino. The federal statutes that control the issue mandate service providers to disclose to the Secretary any ownership or control interest in excess of 5% with a person or entity in interest. The only cited statute that addresses disqualification, 42 U.S.C. § 1320a–7(b)(8), confers that authority upon the Secretary, not the State agency, and only if one or more of the limited circumstances enumerated in the statute are present. *See e.g. Anderson v. Thompson,* 311 F.Supp.2d 1121, 1125 (D.Kan.2004)(mandatory exclusion from Medicare, Medicaid or other Federal health care programs applies to those convicted of program related crimes, while permissive exclusion applies to those the Secretary of Health and Human Services has determined in an administrative proceeding have committed certain acts described in specific statutes).

Therefore, First Medical has showed a strong likelihood of succeeding on the merits. That strong likelihood, in turn, tilts the other three elements of the preliminary injunctive relief standard in First Medical's favor.

### 2. *Irreparable harm*

Although most of the damages that First Medical would suffer absent *injunctive* relief would be purely economical and relatively brief (the term of the contract is 1 year), the Court finds that such a possibility is problematic in light of First Medical's strong showing of legal entitlement to participate in the Medicare Platino program. *See EEOC v. Astra USA, Inc.,* 94 F.3d 738, 743 (1st Cir.1996)("when the likelihood of success on the merits is great, a movant can show somewhat less in the way of irreparable harm and still garner preliminary injunctive relief"). Consequently, the Court rules that First Medical meets this requirement.

### 3. *Balance of Interests*

The foregoing also leads the Court to conclude that First Medical has more to lose if no injunction issues than ASES if

Any entity with respect to which the Secretary determines that a person—
A)(i) who has a direct or indirect ownership or control interest of 5 percent or more in the entity or with an ownership or control interest (as defined in section 1320a–3(a)(3)of this title) in that entity,
(ii) who is an officer, director, agent, or managing employee (as defined in1320a–5(b) of this title) of that entity; or
(iii) who was described in clause (i) but is no longer so described because of a transfer of ownership or control interest, in anticipation of (or following) a conviction, assessment, or exclusion described in subparagraph (B) against the person, to an immediate family member (as defined in subsection (j)(1) of this section) or a member of the household of the person (as defined in subsection (j)(2) of this section) who continues to maintain an interest described in such clause-
is a person—
(B)(i) who has been convicted of any offense described in subsection (a) of this section or in paragraph (1), (2), or (3) of this subsection;
(ii) against whom a civil monetary penalty has been assessed under section 1320a–7a or 1320a–8 of this title; or
(iii) who has been excluded from participation under a program under subchapter XVIII of this chapter or under a State health care program.

one does. ASES will not have to disburse additional monies by including First Medical as a service provider, and the administrative inconvenience of adding a service provider at this stage is placated by the implications of excluding an entity that so far has shown that is legally qualified to participate in the program.

### 4. *Effect on Public Interest*

Finally, since First Medical entering the Medicare Platino market will result in more options to beneficiaries, the Court finds that the public interest is best served by issuing the preliminary injunction.

### CONCLUSION

For the reasons discussed above, First Medical's Motion for Preliminary Injunction is hereby **GRANTED**. Accordingly, **IT IS HEREBY ORDERED, ADJUDGED AND DECREED:**

That defendant Nancy Vega and other responsible officials of the "Administración de Seguros de Salud de Puerto Rico" and/or their successors, agents, servants, employees, and attorneys, and those persons in active concert and participation with them, who receive actual notice of this Preliminary Injunction, by personal service or otherwise, be and are hereby, (a) **ENJOINED** from applying Section 7033(c) of Law No. 72 of September 7th, 1993 to disqualify First Medical Health Plan, Inc., from providing services to beneficiaries of Medicare Platino.

(b) **RESTRAINED AND ENJOINED** from taking any steps to implement or enforce so much of the Executive Director's Orders of November 10th, 2005, and November 17th, 2005, as may be inconsistent with or contrary to this Preliminary Injunction.

c) **ORDERED AND COMPELLED** to reevaluate First Medical's proposal in accordance with this Opinion and Order.

IT IS SO ORDERED.

In San Juan, Puerto Rico, this 20th day of December, 2005.